ROBERT H. LAW, Appellee, *vs.* ELISHA C. WARE, Appellant.

*Opinion filed February 19, 1909.*

1. JURISDICTION—*when equity cannot grant relief although defendant has submitted to jurisdiction.* If the subject matter of a bill of complaint is wholly foreign to the jurisdiction of a court of chancery the court is incompetent to grant the relief sought for, and it will be denied although the defendant has submitted himself to the jurisdiction of the court.

2. SAME—*if subject matter is not foreign to equity, objection to jurisdiction must come early.* If the subject matter of a bill of complaint belongs to that class of which a court of equity will take jurisdiction when the facts create some equitable right or the relation of the parties renders the exercise of such jurisdiction proper, an objection that there is an adequate remedy at law should be taken at the earliest opportunity. ·

3. SAME—*objection of an adequate remedy at law—how made.* An objection of adequate remedy at law may be taken by a general demurrer for want of equity and the objection may be called to the attention of the court upon argument of the demurrer, or if not made by demurrer defendant may specifically point out such objection in his answer; but if the court is competent to grant the relief sought, the objection comes too late when made after an answer is filed not pointing out such objection.

4. SAME—*when objection that the complainant had an adequate remedy at law will not be considered.* Where a bill seeks an accounting of the profits from a land deal and seeks ·to compel de-

fendant to account for and pay over commissions on another sale in which the defendant acted as complainant's agent, an objection that the complainant had an adequate remedy at law will be regarded as waived and will not be considered, where it is not made until after the filing of an answer not specifically pointing out the objection but claiming the same advantage as though the defendant had demurred to the bill.

5. ACCOUNTING—*proper adjustment of accounts where the parties are to share profits.* Where the complainant and the defendant in a proceeding for accounting were to share equally in the profits of a purchase and sale of land, the defendant is not entitled to hold out his entire share of the commissions and fees paid to his firm for conducting the transactions, but he should account to the complainant for one-half of the share so received by him.

6. SAME—*when the defendant is not entitled to credit for note paid by him.* In determining the complainant's share of the profits from the purchase and sale of a tract of land, the defendant is not entitled to credit for loss on a note given by him for a ninety-day option on the land in order to induce a second sale thereof, where the evidence shows such option was a personal scheme of the defendant, of which the complainant had no knowledge and of the benefits of which he was given no opportunity to avail himself.

7. PRINCIPAL AND AGENT—*an agent cannot ordinarily represent both seller and purchaser.* Ordinarily an agent to sell land owes to his principal the exercise of his best efforts and skill to obtain as large a price as he can, and he cannot, without his principal's consent, also represent the purchaser, and if he puts himself in such inconsistent position he cannot recover for services rendered.

8. SAME—*when the principal has no right to money received by agent.* Where an owner of land fixes his own price therefor and employs an agent, not to secure as large a price as he can but to secure an acceptance of the proposition, if the sale is made as proposed and the seller receives all that he agreed to take, the fact that the agent for the purchaser agreed to, and did, divide his commission with the seller's agent gives the seller no claim on such money, whether the sale was made with or without commission to the seller's agent.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. W. M. McEWEN, Judge, presiding.

BARKER, CHURCH & SHEPARD, (WILLIAM T. CHURCH, of counsel,) for appellant:

The defendant is not estopped by his answer from asserting complainant's remedy is at law and not in equity. *Ryan* v. *Duncan,* 88 Ill. 144; *Black* v. *Miller,* 173 id. 489; *Stock Exchange* v. *McClaughry,* 148 id. 372.

Brokers who effect a sale at a price fixed by their principal, in which they exercise no discretion, or mere middlemen who bring together the parties, who make an exchange upon their own terms, may lawfully receive and recover commissions from both parties to the transaction. *Barry* v. *Schmidt,* 57 Wis. 172; *Orton* v. *Schofield,* 61 id. 382; *Stewart* v. *Mather,* 32 id. 344; *Knauss* v. *Brewing Co.* 142 N. Y. 70; *Montross* v. *Eddy,* 94 Mich. 100; *Ranney* v. *Donovan,* 78 id. 318; *Manders* v. *Craft,* 32 Pac. Rep. 836; *Merryman* v. *David,* 31 Ill. 404; *Green* v. *Robertson,* 64 Cal. 75; *Balheimer* v. *Reichardt,* 55 How. Pr. 414; *Mullen* v. *Keetzleb,* 70 Ky. 253; *McLure* v. *Luke,* 154 Fed. Rep. 647; *Rupp* v. *Sampson,* 77 Am. Dec. 417; *Herman* v. *Martineau,* 60 id. 368; *Siegel* v. *Gould,* 7 Lans. 177; *Alexander* v. *University,* 57 Ind. 466; *O'Neill* v. *Sinclair,* 153 Ill. 525.

HORTON & MILLER, (O. H. HORTON, of counsel,) for appellee:

The court has general equity jurisdiction because of fraud and of trust relations and estate. *Seymour* v. *Freer,* 8 Wall. 202; *Barling* v. *Peters,* 131 Ill. 78; *Matthews* v. *Kerfoot,* 167 id. 313; *Ingraham* v. *Mariner,* 194 id. 269; *Doyle* v. *Murphy,* 22 id. 502.

Where a court of equity obtains jurisdiction for one purpose it may retain it for all purposes. *Railroad Co.* v. *Walton,* 150 Ill. 428; *Stickney* v. *Goudy,* 132 id. 213; *Gunning* v. *Sorg,* 214 id. 616.

The parties were partners, at least as to the profits in the Ravinia deal, and therefore a court of equity has ju-

risdiction. *Roby* v. *Colehour,* 135 Ill. 300; *McDonald* v. *Dexter,* 234 id. 517; *Speyer* v. *Desjardins,* 144 id. 641; *Milligan* v. *Mackinlay,* 209 id. 358.

Mr. CHIEF JUSTICE CARTWRIGHT delivered the opinion of the court:

Robert H. Law, appellee, filed his bill in equity in the superior court of Cook county against Elisha C. Ware, appellant, for an accounting of the profits of a purchase and sale by said parties of a tract of land and to compel appellant to pay over a balance claimed to be due, and also to compel appellant to account for and pay over commissions received, while acting as agent for appellee, from the other party to an exchange of real estate. The superior court approved the report of a special commissioner and entered a money decree against appellant for $5112.48, with interest from the date of the commissioner's report. Appellant removed the cause by appeal to the Appellate Court for the First District, and the branch of that court reversed the decree and remanded the cause to the superior court, with directions to enter a decree in favor of appellee for $3112.48, with interest from the date of the commissioner's report to the date of such decree. A further appeal was prosecuted to this court.

It is first contended that the superior court erred in granting any relief, for the reason that the complainant had a complete remedy at law. The defendant did not demur to the bill, but at the conclusion of his answer prayed the same right and advantage of the answer as if he had especially pleaded or demurred to the bill. If the subject matter of a bill of complaint is wholly foreign to the jurisdiction of a court of chancery, such as a claim of damages for slander, assault and battery or personal injury, the court is incompetent to grant the relief sought for, and it will be denied although the defendant has submitted himself to the jurisdiction of the court; but if the subject

matter belongs to that class of which a court will take jurisdiction when the facts create some equitable right or the relation of the parties renders the exercise of such jurisdiction proper, an objection that there is an adequate remedy at law should be taken at the earliest opportunity. (*Stout v. Cook*, 41 Ill. 447.) The objection is properly taken by demurrer, and if so taken the demurrer may be general for want of equity. All matters which go to the jurisdiction of the court may be taken advantage of by demurrer, whether especially pointed out in the demurrer or not, and the objection may be called to the attention of the court on the argument of the demurrer. (*Winkler* v. *Winkler*, 40 Ill. 179; *Wangelin* v. *Goe*, 50 id. 459; *Gage* v. *Abbott*, 99 id. 366; *Gage* v. *Griffin*, 103 id. 41; *Wetherell* v. *Eberle*, 123 id. 666.) If the objection is not made by demurrer the defendant may still insist in his answer that the case made by the bill is not brought within the class of cases in which courts of equity assume jurisdiction for the reason that the complainant has an adequate remedy at law; (1 Ency. of Pl. & Pr. 883;) but if the court is able to grant the relief asked for and defendant submits himself to the jurisdiction of the court without specifically pointing out the objection in the answer it will be regarded as waived. An objection that the court ought not to assume jurisdiction because there is an adequate remedy at law comes too late after filing an answer in which the objection is not affirmatively set out and relied on. (*Nelson* v. *First Nat. Bank of Chicago*, 48 Ill. 36; *Ryan* v. *Duncan*, 88 id. 144; *Chicago Public Stock Exchange* v. *McClaughry*, 148 id. 372; *Kaufman* v. *Wiener*, 169 id. 596; *Black* v. *Miller*, 173 id. 489.) Although defendant in his answer claimed the same right and advantage as if he had especially demurred to the bill, he did not point out or rely upon the objection now made, and the court being competent to grant the relief asked for, the objection comes too late and will not be considered.

There were two transactions between the complainant and the defendant. The first was in February, 1900, when they agreed to buy 140.8 acres of land at Ravinia, in Cook county, at $300 per acre, and to divide the profits growing out of the purchase, equally. They were both engaged in the real estate business but the defendant attended to the matter personally. There was to be a first payment of $10,000, each putting in $5000, and $32,240 was to be secured by mortgage on the land. Each of the parties put up $500, which was paid down and called earnest money. The defendant and Charles S. Read were equal partners in the real estate broker's business under the name of E. C. Ware & Co., and the land was conveyed to a person connected with that firm, who made notes and a mortgage for $32,240, the deferred portion of the purchase money. The transaction was to be finally closed in March, and before that time the defendant found a purchaser in Walter C. Nelson at $400 per acre. The two transactions were closed up at the same time, when Nelson assumed the mortgage for $32,240 and gave his note for $7000, secured by a second mortgage on the property, and paid the balance in cash. The price complainant and defendant were to pay was $42,240 and the sale to Nelson $56,320, so that there was a good profit in the transaction. Afterward the defendant negotiated with a man named Lytton for the sale of the land by Nelson to him, and to induce Lytton to make the purchase the defendant gave his note for $2500 for an option to buy the land within ninety days for $100,000. He did not avail himself of the option but paid the note. The defendant paid to the complainant $5836.23, and the superior court made a further charge against him of $1312.48. The defendant, as a partner with Charles S. Read, received one-half of the commission paid by the seller on the original purchase, and the court charged him with one-half of the money so received, being $151.50. He also received in like manner one-half of a commission on the sale to Nel-

son, and the court charged him with one-half of that, being $350. The defendant also made a charge of $600 as having been paid to the person connected with his firm who received the conveyance and made the mortgage, which was claimed to be a charge for performing that service, and the court charged him with one-half of that sum. These items, with the $500 advanced by the complainant for the cash payment and a small balance of account, made up the sum of $1312.48. The principal claim of the defendant was that he gave the note for $2500 for the option to secure payment of the second mortgage for $7000; that Nelson's circumstances became straitened, and the $7000 would be lost unless the property was sold to some responsible person so that the encumbrances would be paid. The complainant knew nothing about the giving of the note or the option and he was not given any opportunity to avail himself of its benefits. The evidence fairly justifies the conclusion that the option was a personal scheme of defendant and that he was not entitled to charge one-half of the money that he lost on the option. The person who received the conveyance and made the notes and mortgage was not paid anything for that service, and if the money was paid to defendant's firm, as he claimed, it was without authority. Our conclusion is that there was no error in the adjustment of the account as to that transaction.

The remainder of the complainant's claim grew out of an exchange of property by him for property of the Board of Church Extension of the Methodist Episcopal church. Complainant was the owner of property in Chicago called the Vermont Hotel and the church board owned a tract of sixty-seven acres at Auburn Heights, in Cook county. The Chicago Title and Trust Company held the title to both pieces of property in trust for the owners. The complainant desired to dispose of his property and had made a contract for an exchange with another party who did not comply with the contract. On April 9, 1904, the complainant

wrote the following letter to the firm of which defendant
was a member:

"*Messrs. E. C. Ware & Co., Chicago, Ill.*

"GENTLEMEN—Upon the consummation of the sale of the Ver-
mont Hotel for the sum of $30,000 cash, and the conveyance to me,
free and clear of incumbrance, of sixty-seven acres, more or less,
in the Auburn Heights sub. of the east ½ N.E.¼, I hereby agree
to pay you the sum of $2000 in cash, deducting therefrom a note
I now hold of $700 signed by E. C. Ware.          ROBERT H. LAW."

On the same day complainant wrote a letter to the Chi-
cago Title and Trust Company authorizing that corpora-
tion to convey the Vermont Hotel property for $150,000,
to be paid as follows: $30,000 in cash within twenty days,
and the sixty-seven acres of land at Auburn Heights to be
conveyed to complainant free and clear of encumbrances.
Hamilton B. Bogue, a real estate broker, was the agent for
the church board, and William C. Rigby was the attorney
of the board and had an account against it for services.
The defendant and Bogue negotiated for the exchange and
arrived at·an agreement by which the board was to convey
the sixty-seven acres and pay $30,000 to Law for the Ver-
mont property. The board was to put up $8000 additional,
of which $2000 was to go to Rigby for moneys due him
for services, $1500 was to indemnify the title and trust
company against any costs and expenses in any suit that
might be brought against it on the previous contract, and
the remainder was to be used for expenses and commis-
sions. The usual and customary broker's commission on
an exchange of property of the value of $150,000 placed
on the Vermont property was two and one-half per cent,
which would be $3750. The church board raised $35,000
by mortgaging the Vermont Hotel and the money was put
in the hands of the title and trust company, and Rigby
made up the balance of $3000 from money belonging to
the church board. The exchange was completed and com-
plainant received $30,000 in cash and the sixty-seven acres,
according to his proposition. He paid $2000 mentioned in

his letter of April 9, 1904, after deducting the amount of defendant's note for $700, but whether such payment was for commissions on this exchange is a matter in dispute. The rest of the money of the church board in the hands of the title and trust company was disbursed by paying $2000 to Rigby for his services, $875 for commissions to the firm that made the loan for the church board on the Vermont property, $50 to an architect for examining that property, $3575 to Bogue and the defendant, out of which $175 was paid for title expenses and the balance was equally divided between them. That left $1500, which was deposited with the title and trust company to indemnify it with respect to the former contract, and that sum was to be returned to the church board if no suit was brought against the company within a certain time, and $500 of it has been returned. The superior court charged the defendant with $2000 paid to Rigby and $1800 received from Bogue as commissions. The Appellate Court decided that the defendant was not liable for the $2000 paid to Rigby out of the money of the church board, and reversed the decree to that extent. That court was of the opinion that there was no agreement or understanding between any of the parties that the complainant should receive any sum of money beyond $30,000 which was paid to him, and that is unquestionably true. The money divided between Bogue and the defendant was the commission of Bogue, and the view of the Appellate Court was, that if Bogue had retained it the complainant would have had no just ground of complaint, but that, as between the complainant and defendant, the complainant was entitled to whatever defendant obtained from Bogue and the defendant was bound to pay it over. The complainant had no claim, real or apparent, to the money which Rigby received and which the church board owed him for his services, and no cross-error is assigned on the decision of the Appellate Court respecting that money.

As before stated, the question whether the $2000 mentioned in complainant's letter to E. C. Ware & Co. was to be paid to that company as a commission on this transaction was in dispute at the hearing. There had been a contract for the sale of the Vermont Hotel property to another party in 1903 for cash and other real estate, and that party had failed to comply with the contract. There had been some attempt to cancel it but the party claimed rights under it. The defendant testified that he was to have had a commission out of that deal, and that complainant agreed if this exchange went through he would pay him the $2000 on that account. The complainant testified that the $2000 was to be for commissions on this exchange. If the understanding was as claimed by the defendant and there was no commission to be paid on this transaction, the division by Bogue of his commissions with the defendant was entirely proper and in accordance with an established custom among real estate brokers in Chicago. If, however, the commission was for this exchange or for both, the defendant owed no duty to the complainant other than to secure the exchange on the terms fixed by the complainant. A man cannot serve two masters, and ordinarily an agent to sell property owes to his principal the exercise of his best efforts and skill to obtain as large a price as he can, and cannot, without the knowledge and consent of his employer, also represent the purchaser, whose interest is to buy for the lowest possible price. If he has put himself in such an inconsistent position he cannot recover for services rendered. (*Bunn* v. *Keach,* 214 Ill. 259.) In this case, however, the complainant, who was a real estate dealer, fixed his own price on the property, and did not employ the defendant to secure the best price he could obtain but only to secure the acceptance of his proposition. Ordinarily an owner who lists property for sale with a real estate broker and who fixes a minimum price understands, and has a right to expect, that the broker will obtain as large a price

238—24

as possible, and the broker expects and is entitled to commissions on the price that he may obtain. But here the complainant fixed his own price, and, assuming that his version of the agreement was the correct one, the amount was much less than the usual commission, with no increase or further compensation in any event. We do not see how it can be said that the defendant placed himself in the transaction in a position where he owed a duty to the church board inconsistent with his duty to the complainant. The agreement of the church board was to pay Law $30,000 and no more, and convey the sixty-seven acres, and to use the balance of the money for the purpose to which it was applied. Complainant acquired no right to it by the agreement and had no claim against Bogue for it or any part of it. In our opinion the fact that Bogue agreed to divide, and did divide, his commissions with the defendant did not give the complainant any right to demand the money. The proposition of complainant was in writing and was made to the firm of E. C. Ware & Co., but if he had a right to hold the defendant individually to the performance of the agreement, there is no claim that it was not performed in accordance with its terms. Practically complainant made his own bargain and fixed the terms which would be satisfactory to him, and we think that the superior court erred in requiring the defendant to pay him anything on account of the exchange and the Appellate Court erred in not reversing the decree in that respect.

The judgment of the Appellate Court and the decree of the superior court are reversed so far as any allowance was made to the complainant for moneys received by the defendant from Bogue, and the cause is remanded to the superior court, with directions to enter a decree in favor of complainant and against the defendant for $1312.48, with interest at five per cent from the date of the special commissioner's report.

*Reversed and remanded, with directions.*