SUNDSTRAND CORPORATION, a Delaware corporation, Plaintiff-Appellant,

v.

STANDARD KOLLSMAN INDUSTRIES, INC., an Illinois corporation, et al., Defendants-Appellees.

Nos. 72-1426, 72-1427.

United States Court of Appeals, Seventh Circuit.

Argued April 9, 1973.

Decided Oct. 18, 1973.

Rehearing Denied Nov. 8, 1973.

2. 407 U.S. at 462, 92 S.Ct. at 2203.

W. Donald McSweeney, Chicago, Ill., Richard M. Schilling, Rockford, Ill., for Sundstrand Corp.

Frank F. Fowle, Paul E. Freehling, Pope, Ballard, Shepard & Fowle, Chicago, Ill., for Standard Kollsman Industries, Inc., and John Huarisa.

Albert E. Jenner, Jr., Donald R. Harris, Lynne E. McNown, Jenner & Block, Chicago, for Henry W. Meers.

Before SWYGERT, Chief Judge, KILEY and CUMMINGS, Circuit Judges.

SWYGERT, Chief Judge.

Appeal No. 72–1426 arises out of an action brought by Sundstrand Corporation to secure redress for alleged violations of Section 10(b) of the Securities Exchange Act of 1934[1] and the related Rule 10b–5[2] by Standard Kollsman Industries, Inc. (SKI), John B. Huarisa, and Henry W. Meers in connection with the transfer to Sundstrand of an option held by Huarisa to purchase stock of SKI. Sundstrand sought as relief a recission of the transfer and the assessment of damages against the named de- fendants. At the close of Sundstrand's case, the district judge granted motions of the several defendants to dismiss the case under Rule 41(b) of the Federal Rules of Civil Procedure. Sundstrand has appealed, taking particular issue with the refusal of the trial judge to allow an amendment of its complaint and his refusal to admit a considerable volume of evidence offered by Sundstrand.

Appeal No. 72–1427 is based upon a counterclaim filed by Huarisa against Sundstrand for specific performance, alleging that Sundstrand owed and had failed to honor a monetary obligation to Huarisa due in connection with the stock option transfer agreement. This claim was dismissed on Sundstrand's motion, the judge having found that Huarisa had failed to demonstrate his lack of an adequate remedy at law. Huarisa argues that Sundstrand had no standing to object, midway through trial, to his relief in equity, that the trial judge clearly erred in finding an adequate remedy at law, and that the trial judge should have awarded damages in any event rather than dismissing the case. Sundstrand also raises a contractual defense under 15 U.S.C. § 78cc(b).

I

Sundstrand is a Delaware corporation with its principal place of business in Illinois. SKI is an Illinois corporation with numerous subsidiaries, the most prominent of which is the Kollsman Instrument Corporation (KIC). At all times pertinent to this suit, Huarisa and Meers held positions of responsibility at SKI: Huarisa as president and chairman of the board, Meers as a director.

Sometime in the middle of November 1968, Huarisa met with executives of Sundstrand to discuss the possibility of merger between Sundstrand and SKI. In late December 1968, following considerable discussion and negotiation, Meers and Huarisa were presented by Sundstrand with a written proposal providing for the acquisition of SKI's assets and liabilities in exchange for

1. 15 U.S.C. § 78j.

2. 17 C.F.R. § 240.10b–5.

Sundstrand common stock having an approximate value of $38.25 per share of SKI stock. The proposal was subject to approval by the boards of SKI and Sundstrand and by the stockholders of SKI. On January 2, 1969, Huarisa agreed to open SKI's books and records to Sundstrand without reservation and, on January 7, a survey team from Sundstrand began an exhaustive investigation of SKI and its subsidiaries. The results of the survey put an end to the merger negotiations. Officers of Sundstrand met with Huarisa and Meers on January 20. As the trial judge found, Sundstrand represented:

> . . . that both the [survey] team and they had concluded that (a) the product compatibility which Sundstrand had anticipated prior to the survey as a likely result of a combining of the two companies was no longer anticipated; (b) the combined companies might experience problems with their labor unions; and (c) SKI's earnings projections were overestimated.

As a result, the two firms agreed to discontinue merger negotiations.

Sundstrand, however, did not emerge from the negotiations unscathed. On January 4, 1969, two days after Sundstrand had tendered its contingent merger proposal, Huarisa informed Sundstrand that a problem had arisen with a quantity of SKI stock. At a meeting on January 6, officers of Sundstrand discovered that a large block of SKI stock had been offered for sale to Huarisa, pursuant to an agreement made by Huarisa with the Burke family, large stockholders in SKI. That agreement gave Huarisa a right to purchase SKI stock held by the Burkes once they had received a bona fide offer to purchase and had made a decision to sell. The price to Huarisa was to be the same as that specified in the purchase offer. This "right of first refusal" lapsed thirty days after the receipt of an offer by the Burkes. At the January 6 meeting, Huarisa informed Sundstrand that the Burkes had received an offer from Sun

Chemical Corporation some twenty-seven days earlier to purchase a sizeable block of SKI stock. Huarisa stated that he did not intend to purchase the stock for his own account and added that an acquisition of the shares by Sun Chemical would provide a substantial impediment to any merger between SKI and Sundstrand.

Taking this cue, Sundstrand expressed a willingness to purchase Huarisa's rights to the Burke stock and to issue shares in Sundstrand to reimburse Huarisa for his payment of funds due the Burkes within three days. Huarisa accepted this offer. On January 8, he paid the Burkes sufficient funds to hold open his right of first refusal, and executed an agreement with Sundstrand the next day, conveying his purchase rights in return for reimbursement of the monies paid the Burkes.

On February 6, 1969, more than two weeks after it had rejected the possibility of merger with SKI, Sundstrand paid the Burkes $6,360,915 and received the stock of SKI which Sun Chemical had earlier offered to purchase. Huarisa was repaid on March 3, when Sundstrand transferred to him 5,686 shares of its common stock. By its agreement with Huarisa, Sundstrand was to repurchase the shares from him upon fifteen days' notice at any time within two years of the contract date.

This suit was filed August 8, 1969, after SKI published a report of its financial results for the year 1968. Sundstrand alleged that the actual profit picture for the year 1968—actually not a profit picture at all, SKI having suffered a net loss equivalent to 15 cents per share—had been concealed from it by Huarisa, Meers, and SKI, as individuals and as a conspiracy. The complaint specifically pointed to a public report of SKI for the first three quarters of 1968 which showed an 86 cents per share profit for that period, a representation by defendants that the earnings of SKI for the year 1968 would be about $1.16 per share, and a statement by defendants that the Avionics

Division of KIC was not incurring losses. At the end of Sundstrand's case, the trial judge granted motions of the defendants to dismiss under Rule 41(b), F.R.C.P.

Following his dismissal of Sundstrand's action, the district judge proceeded to try Huarisa's counterclaim, wherein Huarisa alleged that Sundstrand had failed to abide by its contractual obligation to repurchase the 5,686 shares of its common stock which had been transferred to Huarisa in repayment for the Burke option. The claim was dismissed after both sides had presented their evidence, the trial judge having found that Huarisa, being possessed of an adequate remedy at law, was not entitled to the specific performance he sought.

## II

As noted, the complaint in No. 72–1426 alleged three specific acts of misconduct on the part of Huarisa and Meers. It also contained a general allegation of wrongdoing, Paragraph 7:

In connection with Sundstrand's purchase of the 223,190 common shares of SKI stock, the defendants conspired with each other to violate, and each of them did violate, Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C.A. § 78j, and clauses (1), (2) and (3) of Rule 10b–5 of the General Rules and Regulations promulgated thereunder by the Securities and Exchange Commission, 17 C. F.R. § 240.10b–5, by employing a device, scheme or artifice to defraud, by making untrue statements of material facts and omitting to state material facts necessary in order to make the

statements made, in the light of the circumstances under which they were made, not misleading, and by engaging in an act, practice or course of business which operated as a fraud or deceit upon Sundstrand. Such violations were effected by the use of instrumentalities of interstate commerce.

At trial, the district judge ruled that this general statement was limited by the specific claims of fraud made in the complaint and refused to admit evidence which Sundstrand sought to introduce as proof of fraud beyond the specific acts alleged in the complaint. This was error.

Pleading is no longer a procedural game of skill at which counsel must be adept in order to insure the decision of his case on its merits. Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L. Ed.2d 80 (1957). Perhaps the most striking development of modern procedure has been the recognition that pleading is important only to inform the opposing party of what is claimed and the grounds upon which the claim rests. And in deciding whether a complaint fairly notifies a defendant of matters sought to be litigated, courts have often looked beyond the pleadings to the pretrial conduct and communications of the parties. *See, e.g.*, Brennan v. Midwestern United Life Ins. Co., 417 F.2d 147, 155 (7th Cir. 1969); State Farm Mutual Auto Insurance Co. v. Scott, 198 F. 2d 152 (5th Cir. 1952); Scruggs v. Chesapeake & Ohio Ry. Co., 320 F.Supp. 1248 (W.D.Va. 1970). The fruits of discovery, in particular, provide a wealth of information relevant to discerning the breadth of a complaint.[3] 4A J. Moore,

---

3. That the trial judge took the opposite view is apparent from the record:
MR. FROEHLING:
[Paragraph 15] is the only paragraph where they spell out what fraud the defendants are charged with, and there is not one word your Honor, in Paragraph 15 about any of the matters that Mr. Montgomery relates to your Honor now. There's not a word in there about other mergers, about false statements of receiving offers of $45 per share, or anything like it, and your Honor,

the answers to interrogatories which the plaintiff Sundstrand filed in this case simply will not do as a substitute for a pleading. The pleading in his case has not been amended.
THE COURT:
I interrupt you to say that I agree with that. That is not what interrogatories are used for. They might lead to an amendment of a pleading, but I agree with you, they are not a substitute for a pleading.

Federal Practice, ¶ 33.17 at 33–85 to 33–89 (1971).

■ Prior to the trial of this case, defendants Huarisa and SKI requested by interrogatory that Sundstrand "describe in detail" the facts supporting its claim in Paragraph 7 of the complaint. Sundstrand filed a lengthy response describing considerably more fraudulent conduct on the part of defendants than was specified in the complaint. The answer was prefaced with this comment:

> All of the facts referred to in the following statement are parts of the device, scheme or artifice to defraud Sundstrand and the act, practice or course of business which operated as a fraud or deceit upon Sundstrand. Many of these facts are summarized in Sundstrand's complaint herein.

Defendants, then, knew that events other than those detailed in the complaint were a subject of suit as Sundstrand viewed the case, knew that Sundstrand intended to prove the occurrence of these events in support of its case, and knew the substance and particulars of Sundstrand's version of each such event.[4] They cannot now argue, nor should the trial judge have allowed them to argue, that proof of Paragraph 7 was limited to proof of the specific allegations of fraud in the complaint.

Meers, accepting this conclusion *arguendo*, goes on to assert that the narrow reading of the complaint by the trial judge worked no prejudice to Sundstrand's case against him, the trial judge having admitted evidence against Meers as though he had taken a broad view of the complaint. We cannot accept this argument. Not only is it factually incorrect;[5] it fails to recognize that the trial judge must have limited himself to ruling on the allegations of the complaint as he narrowly viewed it. True, evidence of the Burke Report[6] was admitted against Meers. But this could have done Sundstrand little good, for the Burke Report and Meers' failure to disclose it to Sundstrand were not specifically mentioned in the complaint. The failure of the trial judge to mention the Burke Report in his findings strongly suggests that he viewed the document and related conduct to be without relevance to Sundstrand's case.[7]

We conclude that Sundstrand must have a new trial in the district court. We reverse the dismissal by the district judge and remand the case for that purpose.

### III

In his counterclaim against Sundstrand, Huarisa alleged that Sundstrand had failed to meet its contractual obligation to repurchase stock which it had transferred to him as repayment for his purchase of the Burke option. As relief, Huarisa requested:

> A. That an order of specific performance of the provisions of Paragraph 4(a) of the Agreement dated January 9, 1969, relating to his right to sell to Sundstrand 5,686 shares of Sundstrand common stock for the cash price of $58,875, be entered in his favor and against Sundstrand.
>
> B. That such other and additional relief as is just and equitable be awarded to him and against Sundstrand.

---

4. Meers must be included, since he does not contend that the contents of the answer were unknown to him.

5. See Tr. 2695–2706.

6. The Burke Report was a document prepared in mid-1968 which suggested to SKI's Board of Directors that SKI was engaged in dangerous and improper accounting practices. Sundstrand alleged that Meers' failure to disclose this report was an omission of a material fact under Rule 10(b)–5.

7. In this connection, it is noteworthy that the trial judge ruled the Burke Report and related documents to be inadmissible against Huarisa and SKI by reason of irrelevance. He offered the same ruling to counsel for Meers. Though the offer was declined, counsel did add: "I am confident that in failing to join that motion [of SKI and Huarisa] I have not waived any right to keep out irrelevant evidence."

Sundstrand made no objection to the grant of equitable relief until after it had presented its case as counterdefendant; it then sought to dismiss the counterclaim, suggesting that Huarisa had an adequate remedy at law and was not entitled to specific performance. The trial judge agreed and dismissed the counterclaim with prejudice.

Huarisa claims this to be reversible error. Since, he argues, the defense of an adequate remedy at law is an affirmative one under Illinois law, and since Illinois law governs that question in federal diversity cases, Sundstrand was barred from raising his adequate remedy at law by its failure to affirmatively plead the point in its answer. We disagree.

It has long been settled that the burden of proof on a particular issue of a diversity case is a matter of substantive law, and, hence, a variable of local law which federal courts must observe under Erie Ry. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Palmer v. Hoffman, 318 U.S. 109, 63 S. Ct. 477, 87 L.Ed. 645 (1943); Cities Service Oil Co. v. Dunlap, 308 U.S. 208, 60 S.Ct. 201, 84 L.Ed. 196 (1939). What is not as clear is whether a determination that a defendant bears the burden of proof on a particular issue under local law is necessary to a conclusion that the issue comprises an affirmative defense which the defendant must plead under Rule 8(c), F.R.C.P., or whether, if the burden is on the plaintiff, the defendant must nevertheless sometimes plead a point affirmatively under the rules. Some courts have held that a defendant must plead as an affirmative defense any issue specifically included in the listing of Rule 8(c), no matter where the burden of proof lies under state law. *See* Cincinnati, N. O. & J. P. Ry. Co. v. Eller, 197 F.2d 652 (6th Cir. 1952); Sampson v. Channell, 110 F.2d 754 (1st Cir.), cert. denied, 310 U.S. 650, 60 S.Ct. 1099, 84 L.Ed. 1415 (1940).

In our view the better rule is that a defendant need plead affirmatively only those defenses upon which he bears the burden of proof. Owens Generator Co. v. H. J. Heinz Co., 23 F.R.D. 121 (N.D. Cal. 1958); 2A J. Moore, Federal Practice, ¶ 8.27[2] at 1849–50 (1971); *See* Francis v. Humphrey, 25 F.Supp. 1 (E.D. Ill. 1938). When as in this case, Rule 8 (c) does not specifically list an issue as an affirmative defense, resort to state law dealing with burdens of proof is the only logical method to ascertain the pleading character of a defense; to require a defendant to plead defenses enumerated under Rule 8(c) without reference to the burdens of proof thereon under state law is an inconsistent approach and an unduly strict and unnecessarily mechanical interpretation of the federal rules.[8] An obvious corollary of this view is that the label which a state court may affix to a defense is as irrevelant to pleading under Rule 8 as is the listing made in section (c) of that Rule.

In support of his contention that adequacy of legal remedy is an affirmative defense under Illinois law, Huarisa cites Law v. Ware, 238 Ill. 360, 87 N.E. 308 (1909), and Chapman v. Barton, 345 Ill.App. 110, 102 N.E.2d 565 (1951). But neither is apposite; each involved a suit in chancery wherein the defendant failed to raise an objection based on plaintiff's adequate remedy at law until after a trial had been held on the merits of the action. The *Law* court ruled:

> [I]f the court is able to grant the relief asked for, and defendant submits himself to the jurisdiction of the court without specifically pointing out the objection in the answer, it will be regarded as waived. An objection that the court ought not to assume jurisdiction because there is an adequate remedy at law comes too late after filing an answer in which the objection is not affirmatively set out and relied on. 238 Ill. at 364, 87 N.E. at 309.

---

8. Significantly, Rule 8(c) was formulated before *Erie* and reflects established federal practice as it existed before that decision came down.

**814**

No view was intimated, there or in *Chapman,* that a defendant would have borne the burden of proving the substance of his objection had it been timely made. More pertinent for our purposes is Barton v. De Wolf, 108 Ill. 195 (1883), a suit for specific performance of a contract to sell stock. In affirming a decree dismissing the case, the court stated:

> To authorize a decree for the performance of such a contract specifically, it must appear that the remedy at law is inadequate. This, from all of the adjudged cases, seems to be indispensable. Then, *has appellant brought himself within the exceptional rule?* We think not. If there was a contract for the sale of the shares of the stock, and a breach of the contract, he can be fully compensated in damages at law. *No such peculiar case is made by appellant as requires a court of equity to interfere.* No such special circumstances are shown as to take the case out of the general rule. 108 Ill. at 198 (emphasis supplied).

As this language indicates, the burden rests on an Illinois plaintiff to prove the inadequacy of his legal remedy. *See also* Campbell v. Potter, 147 Ill. 576, 586, 35 N.E. 364 (1893); Pierce v. Plumb, 74 Ill. 326 (1874). This view, moreover, is consistent with other authorities. Trainor v. Mutual Life Ins. Co., 131 F. 2d 895 (7th Cir. 1942). Pomeroy, in his treatise on equity jurisprudence, writes:

> It is the settled rule in England and in the United States that contracts for public securities, government stocks, bonds, etc., will not be enforced, since

they can always be bought in the market. In the United States all such securities are ordinarily purchasable in the market, and the rule is settled by the weight of authority that contracts concerning stocks and bonds of corporations, like those concerning government securities, will not be specifically enforced. [Specific performance is, however, frequently decreed where the contract involves corporate stock of a peculiar or special value to the complainant, or where the subject of the contract is of unknown and of not easily ascertainable value, or where other sufficient grounds are present for the interposition of equity.] 4 Pomeroy's Equity Jurisprudence § 1402 (1941).

At least in cases involving stock contracts, specific performance is an exceptional remedy. The clear import of this view is that a plaintiff must prove the exception to gain his relief, not that the defendant must prove the negative proposition that the case is not an exception. It is the plaintiff, after all, who claims the inadequacy of his redress at law. We conclude that Huarisa bore the burden of proving the inadequacy of his legal remedy, and that Sundstrand was not required to plead the same as an affirmative defense.[9]

 Did Huarisa successfully carry his burden? The trial judge held that Huarisa had not, and we cannot characterize his factual findings as clearly erroneous. One finding of particular importance is this:

> The shares with which the parties here are concerned are bought and sold

9. This view is not inconsistent with *Law* and *Chapman.* Unlike the federal judicial system, Illinois courts are divided into separate jurisdictions of law and equity. A plaintiff's adequate remedy at law entirely defeats the jurisdiction of an Illinois chancery court since it may grant only equitable relief. For this reason, and with considerations of judicial economy in mind, *Law* held that a defendant may not raise the issue of remedy at law once the pleadings have been settled, just as a defendant in federal cases may waive certain jurisdictional objections by failing to raise

them before trial. See Rule 12(h)(1), F.R. C.P.

In a federal court, where the failure of equitable remedy leaves available the entire range of redress at law, the fact of an adequate remedy at law has no jurisdictional dimension whatever, since plaintiff's absence of a right to equitable relief does not defeat the jurisdiction of the court. Thus Rule 12 (h)(1) does not list the defense of adequate legal remedy among those defenses which must be made before trial.

on the New York Stock Exchange; they are easily bought and sold on the market. The shares of stock carry with them no uniqueness nor significance.

Huarisa's claim of an inadequate legal remedy is based largely on his contention that the shares of Sundstrand transferred to him are not registered under the Securities Act of 1933 and that he will be subject to a serious risk of civil and criminal action if he attempts to sell them. Yet he introduced no evidence at trial to support a finding that the Sundstrand shares were unregistered. Because of this failure, he now asserts that the shares are unregistered as a matter of law, relying largely on the restrictive covenant of his agreement with Sundstrand.[10] Unless the shares transferred are unregistered, Huarisa argues, there would be "no other conceivable reason" for his investment representation. Several texts are cited in support: 1 Loss, Securities Regulation 665–66 (2d ed. 1961); Wheat, Report of the Disclosure Policy Study, Disclosure to Investors (The Wheat Report) 163, 171–72 (March, 1969); and Goldberg, Private Placements & Restricted Securities, § 2.5 (1972). These sources do not, however, state that the *only* inference to be drawn from an investment representation is that the shares transferred are unregistered, and we refuse to take that step. On the record as it stands, Huarisa's shares in Sundstrand are in no way unique or difficult to value, and we agree with the trial judge that he is not entitled to specific performance.

■ Moreover, Huarisa would not be entitled to specific performance on his own version of the facts. If the shares are unregistered, and if the sole reason for his investment representation was to allow Sundstrand to transfer those shares without registration, Huar-

isa is perfectly free, under both the securities laws and his contract with Sundstrand,[11] to resell the shares as long as he offers them privately in conformity with the law surrounding the private placement exemption of the Securities Act of 1933, 15 U.S.C. § 77d(2). *See generally,* 1 Loss, Securities Regulation, 665–96 (2d ed. 1961). The shares may be difficult to value, but they are undoubtedly saleable, and Huarisa would have no right to specific performance. Only where shares have no market value *and* cannot easily be disposed of elsewhere will specific performance to compel their repurchase be decreed. *See* Smurr v. Kamen, 301 Ill. 179, 188, 133 N.E. 715, 719 (1921).

■ A remaining question is whether the trial judge erred in dismissing the case rather than awarding damages to Huarisa. Rule 54(c), F.R.C.P., provides in part:

[E]very final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings.

This raises some interesting problems where, as here, plaintiff has focused entirely on equitable relief in his proof and pleadings and has failed to prove his entitlement thereto. If the case is dismissed with prejudice, a subsequent suit for damages would be barred by res judicata. This certainly fails to comport with Rule 54(c), to say nothing of the incongruity of dismissing a suit because of the availability of adequate remedy at law when that remedy exists *in vacuo,* without a right. Yet it is equally clear that a trial judge cannot award damages without proof on the issue by the claimant. The best solution, we think, is to remand the case for a hearing on damages; rather than dismissing the case after refusing to decree specific performance, the judge should

---

10. "Huarisa represents and warrants that he is acquiring the said Sundstrand shares for investment and not with a view to the public distribution thereof."

11. Huarisa may prove both these propositions if Sundstrand elects to sue him for his sale of stock.

have retained jurisdiction of the cause for a hearing on the issue of damages.[12]

Huarisa is not entitled to a hearing on damages, however, if Sundstrand proves that the contract sued upon was made in violation of the Securities Exchange Act of 1933. See 15 U.S.C. § 78cc(b). At the trial of the counterclaim, Sundstrand attempted to introduce into evidence all of the matter it had previously introduced in attempting to make a case against Huarisa under Section 10(b) and Rule 10b–5. Yet by then the trial judge had ruled that Sundstrand had failed to prove actionable fraud on the part of Huarisa in connection with the sale of Burke stock, and the judge correctly accepted Huarisa's contention[13] that Sundstrand was collaterally estopped to attempt proof of the same violations of the securities laws. Because we have ordered a new trial in No. 72–1426, this defect no longer inheres in Sundstrand's offer. Its defense to Huarisa's counterclaim will rise or fall with the outcome of the retrial of its fraud claim against Huarisa.

No. 72–1427 is also reversed and is remanded for a hearing on damages, subject to Sundstrand's failure to prove a violation of Section 10(b) and Rule 10b–5 by Huarisa in connection with the contract sued upon. The case is remanded under Circuit Rule 23 to be assigned to another district judge.

12. A defendant will not be prejudiced by this procedure. As his pleadings made evident, Huarisa wanted equitable, not legal, relief. He introduced no evidence of damage at trial. If he had, the trial judge could properly have refused to hear it if its introduction came as a surprise to Sundstrand. In that event, the issue of damages would properly have been deferred until resolution of the claim for equity and until both sides were prepared to deal with the issues. Were the defendant not surprised, proof on the issue could rightly have been taken forthwith. The distinct advantage of this arrangement is that plaintiff need not present evidence bearing on all possible forms of relief which the trial judge might see fit to grant him. He may focus narrowly on the particular relief to which he feels most entitled and save considerable trial time whenever he loses his case on its merits or gains the relief which he most desires or which he feels most likely to obtain.

13. Counsel for Huarisa stated:

Your Honor, the counter-claimant objects to the offer of proof or offer of evidence by Sundstrand. The law of the case in this matter is that the plaintiff's evidence as presented during its case was insufficient to prove the alleged misrepresentations set forth in the complaint. Accordingly, the evidence offered by Sundstrand at this time is clearly irrelevant to the issues in the counterclaim, the court having found there was no fraud and the court having necessarily found that the plaintiff has failed to prove fraud.