Michael B. STURDEVANT et al.,

v.

Sylvia E. WILBER et al.

No. 75–C–381.

United States District Court,
E. D. Wisconsin.

Jan. 30, 1979.

Menominee Legal Defense/Offense Committee by Andrew B. Reid, Phyllis R. Girouard, Keshena, Wis., for plaintiffs.

Preloznik & Associates by Joseph F. Preloznik, Madison, Wis., for defendants.

### DECISION and ORDER

MYRON L. GORDON, District Judge.

The parties have filed cross motions for summary judgment. This case and my disposition of the motions pending in the case can better be understood in light of the following historical background.

Between 1848 and 1961, the Menominee Indian Tribe lived on lands it had ceded to the United States by treaty. The Menominee reservation continued in existence until Congress passed the Termination Act, 25 U.S.C. §§ 891–902, which became effective in 1961. Pursuant to this Act, federal control over the Menominees was substantially terminated. All tribal property held by the United States was transferred to Menominee Enterprises, Inc., and members of the tribe were to be subject to the laws of the state of Wisconsin.

The provisions of the Termination Act were short-lived. In 1974, Congress repealed the latter statute, and in the Menominee Restoration Act (MRA), 25 U.S.C. §§ 903–903f, mandated restoration of the sovereign rights and federal recognition enjoyed by the Menominee Indian Tribe prior to the Termination Act. Pursuant to the MRA, the Menominee Restoration Committee (MRC) was created. 25 U.S.C. § 903b. The purpose of the MRC was to "represent the Menominee people in the implementation of the Act." Id. In particular, the MRC was to draw up a constitution and a set of bylaws for the tribe and conduct an election to select tribal officers. 25 U.S.C. § 903c.

The named plaintiffs in this case are four enrolled members of the Menominee Tribe who represent other members of the tribe as a class. The defendants are several members of the MRC, who are sued as individuals and in their official capacities.

On December 1, 1978, the parties filed a set of factual stipulations which the court will treat as binding on the pending motions. The stipulations also voluntarily dismissed many of the allegations and several of the defendants named in the plaintiffs' amended complaint. Remaining for disposition are the plaintiffs' claims that the defendant members of the MRC have harmed the plaintiffs by failing to fulfill certain duties required of them by the MRA and also by taking certain actions which are

beyond the scope of authority bestowed on the MRC by the MRA.

## I.  FAILURE TO PERFORM STATUTORY DUTIES

The plaintiffs contend that the MRC has failed to perform certain duties which are imposed under the MRA. In particular, they contend that the defendants have failed to elect tribal officials and have failed to release tribal documents to members of the tribe. As to both of these claims, the defendants have moved for summary judgment.

### A.  *Election of Tribal Officials*

■  25 U.S.C. § 903c provides:

"(c) Within one hundred and twenty days after the tribe adopts a constitution and bylaws, the Menominee Restoration Committee shall conduct an election by secret ballot for the purpose of determining the individuals who will serve as tribal officials as provided in the tribal constitution and bylaws. For the purpose of this initial election and notwithstanding any provision in the tribal constitution and bylaws to the contrary, absentee balloting shall be permitted and all tribal members who are eighteen years of age or over shall be entitled to vote in the election. All further elections of tribal officers shall be as provided in the tribal constitution and bylaws and ordinances adopted thereunder.

"(d) In any election held pursuant to this section, the vote of a majority of those actually voting shall be necessary and sufficient to effectuate the adoption of a tribal constitution and bylaws and the initial election of the tribe's governing body, so long as, in each such election, the total vote is at least 30 per centum of those entitled to vote."

On November 12, 1976, the Menominee Tribe voted to adopt the tribal constitution and bylaws proposed by the MRC. One month after the adoption of the constitution, the MRC announced an election to choose tribal officials. Since that time, the MRC has conducted seven elections. Only one of those elections has met the requirements of § 903c(d) that in order for an election to be valid, thirty percent of the eligible voters must participate in the election, and each successful candidate must receive a majority of the votes cast in order to be elected. As a result, only three of the nine seats on the tribal legislature have been filled.

On the basis of these facts, the defendants urge that they have fulfilled their statutory duties to conduct tribal elections and are thereby entitled to summary judgment.

In response to the defendants' argument, the plaintiffs have submitted the affidavits of several tribal members who aver that the MRC has intentionally delayed the process of electing tribal officials by enacting complicated and confusing election rules and regulations and by failing adequately to publicize said elections. The plaintiffs further claim that the defendants' motive for such dilatory tactics is the perpetuation of the MRC which "shall have no power or authority under [the MRA] after the time which the duly-elected tribal governing body takes office." 25 U.S.C. § 903b(a).

Pursuant to Rule 56, Federal Rules of Civil Procedure, summary judgment may be granted where there is no dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. "In summary judgment procedure the trial court should not weigh the evidence of the plaintiffs against that of the defendants. That is the function of the fact finder *at trial.*" *Staren v. American Nat. Bank & Trust Co. of Chicago,* 529 F.2d 1257, 1261 (7th Cir. 1976) (emphasis in original).

It is undisputed that the defendants' efforts to elect tribal officials have failed to this date. However, the cause for such failure is a matter of dispute. Thus, I am persuaded that the defendants' motion for summary judgment on the issue of election of tribal officials should be denied.

### B.  *Withholding of Tribal Documents*

■  The plaintiffs contend that during the course of its existence the MRC has

**330**

withheld tribal documents to which tribal members should be entitled to access. The plaintiffs admit that those documents sought in the past have been released during this case through discovery.

The MRA does not contain any explicit provision requiring the release of information by the MRC. In the absence of an express statutory mandate, I do not believe that this court should enter a prospective order requiring release of documents which may not presently exist. Also, it is speculative whether the MRC will withhold such documents in the future. *See O'Shea v. Littleton,* 414 U.S. 488, 496–99, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974).

Therefore, the defendants' motion for summary judgment on the issue of release of documents will be granted.

## II. ACTIONS BEYOND STATUTORY AUTHORITY

The plaintiffs claim that the MRC has acted beyond the scope of its statutory authority by entering into contracts with parties other than the Secretaries of the Interior and of Health, Education and Welfare, and by "acting as a tribal governing body" in its administration of said contracts. As to this claim, the plaintiffs have moved for summary judgment. Before considering the substance of the plaintiffs' motion, I must first consider three arguments raised by the defendants which would preclude the court's consideration of the plaintiffs' motion.

■ First, the defendants contend that the issue of the scope of the MRC's authority to enter into contracts was not raised by the pleadings and that therefore the plaintiffs are not entitled to summary judgment on that issue. I am not impressed by the defendants' contention.

Paragraph 33(b) of the plaintiffs' complaint alleges that the defendants had taken "actions unauthorized and beyond the scope of their duties under the Menominee Restoration Act. . . . " Much of the plaintiffs' discovery in this matter required the defendants to disclose the contracts

which the MRC had made during its existence. Thus, I believe that the defendants had ample notice that their authority to enter into certain contracts was an issue in this case, and they will not be unfairly prejudiced by the court's consideration of that issue. *See Tankersley v. Albright,* 514 F.2d 956, 964–65 (7th Cir. 1975); *Sundstrand Corp. v. Standard Kollsman Industries, Inc.,* 488 F.2d 807, 811 (7th Cir. 1973).

■ Second, the defendants argue that the court cannot proceed with regard to the contracts in question because parties to such contracts, other than MRC, are not joined in this action. I am not persuaded that the defendants' argument is correct.

The purpose of the plaintiffs' action is not to determine the rights of the parties to the contracts in question. Rather, the plaintiffs have challenged the defendants' authority under the MRA to enter such contracts. As I stated when this issue was raised in a previous motion, "[b]ased on the plaintiffs' allegations and the relief sought, I conclude that 'complete' relief, as contemplated by the framers of Rule 19(a), [Federal Rules of Civil Procedure], could be granted without the government's presence as a party to the lawsuit." *Sturdevant v. Deer,* 70 F.R.D. 539, 543 (E.D.Wis.1976). *See also National Licorice v. National Labor Relations Board,* 309 U.S. 350, 363, 60 S.Ct. 569, 84 L.Ed. 799 (1940).

■ Third, the defendants contend that the plaintiffs lack standing to challenge the contracts in question. In order to have such standing, the plaintiffs (1) must be seeking to protect an interest arguably within the zone of interests protected by the statute in question, and (2) must allege injury in fact. *Association of Data Processing Service Organizations, Inc. v. Camp,* 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970).

In my judgment, the plaintiffs in this action are seeking to protect an interest as provided by Congress in the MRA. In my decision and order, dated September 1, 1978, 456 F.Supp. 428, 431, I stated:

"The plaintiff has clearly alleged that the defendants acted beyond the mandate of

the Restoration Act and have failed to perform certain duties imposed upon them by the Act. Moreover, such duties were owed to the very class which has brought this suit, members of the Menominee Indian Tribe."

The plaintiffs have alleged that as a result of the defendants' entry into contracts which are not authorized by the MRA, tribal assets have been dissipated. They further allege that the defendants have administered such contracts in a vindictive and discriminatory way. Without purporting to resolve the merits of such allegations, I believe that these allegations are sufficient to meet the "injury in fact" requirement. Thus, the plaintiffs have standing to challenge the authority of the defendants to enter into the contracts in question.

I now must determine the propriety of the plaintiffs' claim that the MRC has acted beyond the scope of authority vested in it by the MRA in entering into and administering contracts with parties other than the Departments of the Interior and of Health, Education and Welfare. In analyzing the plaintiffs' claim, the following provisions of the MRA are pertinent:

"(e) In providing to the tribe such services to which it may be entitled upon its recognition pursuant to subsection (a) of this section, the Secretary of the Interior and the Secretary of Health, Education, and Welfare, as appropriate, are authorized from funds appropriated pursuant to the Act of November 2, 1921 (42 Stat. 208; 25 U.S.C. 13), the Act of August 5, 1954 (68 Stat. 674), as amended, or any other Act authorizing appropriations for the administration of Indian affairs, upon the request of the tribe and subject to such terms and conditions as may be mutually agreed to, to make grants and contract to make grants which will accomplish the general purposes for which the funds were appropriated. The Menominee Restoration Committee shall have full authority and capacity to be a party to receive such grants to make such contracts, and to bind the tribal governing body as the successor in interest to the

Menominee Restoration Committee: Provided, however, That the Menominee Restoration Committee shall have no authority to bind the tribe for a period of more than six months after the date on which the tribal governing body takes office. 25 U.S.C. § 903a(e).

.    .    .    .    .

"The Menominee Restoration Committee shall represent the Menominee people in the implementation of this Act *and shall have no powers other than those given to it in accordance with this Act.*" 25 U.S.C. § 903b(a) (emphasis added).

It is undisputed that during the course of its existence the MRC has entered into numerous contracts with the Departments of the Interior and Health, Education and Welfare. Under the provisions of 25 U.S.C. § 903a(e), the MRC has the power to enter into such contracts.

It is also undisputed that the MRC entered into agreements with the United States Departments of Agriculture, Justice, and Housing and Urban Development, the various departments of the state of Wisconsin, the Lake Michigan Area Agency on Aging, Inc., and various other private and public entities.

In support of their contention that the MRC has the authority to enter into such agreements, the defendants rely on two arguments. First, they urge that such agreements are authorized by 25 U.S.C. § 903d(d), which provides:

"The Secretary [of the Interior] and the Menominee Restoration Committee shall consult with appropriate State and local government officials to assure that the provision of necessary governmental services is not impaired as a result of the transfer of assets provided for in this section."

In my view, § 903d(d) does not authorize the MRC to enter into the agreements mentioned above. The section quoted just above authorizes MRC officials to "consult" rather than contract with state and local officials. Moreover, even if § 903d(d) is construed as authorization for MRC's agree-

ments with state and local officials, it certainly cannot be construed as authorizing agreements with federal or private entities.

Also, in support of their contention that the MRC is authorized to enter the agreements in question, the defendants argue that the MRA must be read broadly to ensure that services and products continue to flow to the Menominees. Although I agree with the defendants that Congress did not intend through the MRA to cut off the Menominees from necessary government services, I am also persuaded that except for those services provided by the Departments of the Interior and Health, Education, and Welfare, the MRC was not the tribal entity intended by Congress to receive or administer such services.

The MRC's powers are strictly limited by the terms of the MRA. Specifically, the MRC has "no powers other than those given to it in accordance with" the MRA. 25 U.S.C. § 903b(a). Furthermore, the MRC has "no power or authority under [the MRA] after the time which the duly-elected tribal governing body takes office." Id. Finally, the MRA states that the MRC has the power to contract with or receive grants from two specifically-named federal departments, and even as to such contracts or grants, the MRC has "no authority to bind the tribe for a period of more than six months after the date on which the tribal governing body takes office."

Under the terms of the MRA, the authority of the MRC is strictly limited to those powers granted by the MRA. The MRA grants the MRC the authority to contract only with the Departments of the Interior and Health, Education and Welfare. Where the provisions of a statute are "clear and unequivocal on their face," this court must follow the dictates of that statute. *United States v. Oregon,* 366 U.S. 643, 648, 81 S.Ct. 1278, 1281, 6 L.Ed.2d 575 (1961). Thus, I conclude that the MRC has no authority to enter into agreements with any entities other than the Departments of the Interior and Health, Education and Welfare. Therefore, the plaintiffs' motion regarding the defendants' actions taken beyond statutory authority must be granted.

As a remedy for those actions taken by the MRC beyond the scope of its statutory authorization, the plaintiffs suggest that all contracts between the MRC and entities other than the Departments of the Interior and Health, Education, and Welfare be declared invalid. They also urge that administration of said contracts be transferred from the MRC to some other unnamed group.

In my judgment, the remedies proposed by the plaintiffs are unnecessarily drastic, in that they could jeopardize the flow of necessary products and services to the Menominee Indian Tribe. The plaintiffs have never contended that such products and services are in themselves harmful, only that their control and administration by the defendants is harmful.

I believe that the remedy to curb abuses in such control and administration is suggested by the MRA itself. Under the terms of that Act, the MRC is to have no power after new tribal officials take office and may not bind the tribe to contracts lasting longer than six months after the date on which the new tribal government is in office. In passing these provisions, Congress apparently intended to limit the MRC's power by limiting the duration of its existence. This intention has to this date been frustrated, due to the fact that the efforts to elect a new tribal government have thus far failed. The MRC has now been in existence for nearly five years. I believe that the best way to prevent abuses in the control or administration of contracts entered into by the MRC is to ensure that a new tribal government is lawfully elected as quickly as possible, as mandated by Congress.

As I stated in a previous section of this decision, there still exists a factual dispute as to the cause for the MRC's previous inability to elect a tribal government. Thus, at this juncture, I do not believe that it would be appropriate for the court to prescribe for the MRC procedures it should use in electing a tribal government. The MRC will be required, however, within

twenty days of the date of this decision, to serve and file a description of the steps it will take to elect the remaining members of the tribal government and the time that will be required to complete such steps. The target for the completion of the election process should be no later than June 30, 1979. The plaintiffs may serve and file a response to the defendants' proposal within fourteen days of its submission.

If, following the submissions of the parties the court finds the steps taken or proposed by the defendants to be satisfactory, I do not now intend to take any further remedial action. If the defendants' proposal is not satisfactory, a further hearing and further remedial steps with regard to the election process are possible.

### III. CONCLUSION

Therefore, IT IS ORDERED that the defendants' motion for summary judgment be and hereby is denied with regard to the plaintiffs' claim of failure to elect a tribal government and is granted with regard to the plaintiffs' claim of failure to release certain documents.

IT IS ALSO ORDERED that the plaintiffs' motion for summary judgment be and hereby is granted with regard to the plaintiffs' claim that the defendants have taken actions beyond the scope of their statutory mandate.

IT IS FURTHER ORDERED that within twenty days of the date of this decision and order the defendants serve and file with this court a precise description of the steps they have taken and will take to elect the remaining members of the tribal government and the time that will be required to complete such steps. The plaintiffs may serve and file with this court a response to the defendants' submission within fourteen days of service thereof.

IT IS FURTHER ORDERED that those parties and allegations dismissed in the stipulation filed by the parties on December 1, 1978, be and hereby are dismissed without prejudice.