Howard B. SAMUELS, et al.,
Plaintiffs–Appellants,

v.

Jack WILDER, et al.,
Defendants–Appellees.

No. 88–1664.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 4, 1988.

Decided April 11, 1989.

Terence P. Boyle, O'Connor & Hannan, Denver, Colo., for plaintiffs-appellants.

Philip Fertik, Adams, Fox, Adelstein & Rosen, Chicago, Ill., for defendants-appellees.

Before CUMMINGS, MANION, and KANNE, Circuit Judges.

MANION, Circuit Judge.

Plaintiffs Howard B. Samuels and partnerships formed by Samuels engaged in oil and gas business ventures with defendant Ansam Associates, Inc. (Ansam). Ansam acquired working interests in and prospects for wells from defendant Jack Wilder, who obtained them from the well operator Sanguine, Ltd. Becoming displeased with the administration of the investments, plaintiffs eventually filed suit against defendants generally alleging fraud and misrepresentation. Plaintiffs asserted that defendants were out to withhold for themselves the best wells. Defendants answered and counterclaimed, alleging breach of contract. The district court granted the defendants' motion for summary judgment; it also granted judgment for defendants against plaintiffs on the counterclaim, 702 F.Supp. 1377. Plaintiffs appealed. We affirm.

## I.

*Background*

Beginning in 1981 plaintiff Howard Samuels entered into several written agreements to participate in oil and gas ventures with defendant Ansam. Samuels was the general partner for several limited partnerships which he had formed. He executed the agreements on behalf of the partnerships. Those partnerships (and the limited partners) are the plaintiffs in this case. Under these agreements the partnerships committed funds to Ansam to purchase working interests in wells and in prospects. Ansam acquired such working interests from defendant Jack Wilder, who acquired them from Sanguine, Ltd.

Once interests in wells were purchased, parties were to execute assignments of in-

terest and prepare a Nominee Agreement to grant Ansam authority to act in all matters concerning commercial exploitation of the prospect. Three Nominee Agreements were executed making Ansam the Nominee. Each included an indemnity provision to indemnify Ansam as Nominee from losses by reason of its nomination. The indemnity clause in all three Nominee Agreements provides:

> The Owner agrees to indemnify the Nominee, his successors, and assigns, and to hold Nominee harmless from all liability, loss, expenses, damages, costs and attorney's fees that Nominee may at any time incur by reason of any type of inquiry, action or suit which may be brought against him or made of him by any person, firm, corporation, or governmental agency or authority or anyone else by reason of the nomineeship.

The district court found and the parties before us agree that this provision is governed, as contractually stipulated, by the laws of New York state.

Plaintiffs grew dissatisfied with the administration of the partnership investments. On behalf of the plaintiffs, Samuels travelled to Ansam's offices in August 1984, to review documents. In October 1984 Ansam withheld $11,908 from quarterly revenue distributions to reimburse itself for the cost of this inspection. In their complaint and amended complaint of 1985 plaintiffs raised general allegations of fraud and misrepresentation, alleging that defendants intended to retain the best wells for themselves and transfer the poorer wells to plaintiffs, a discredited practice in the oil business called "cherry picking." Upon the filing of the lawsuit defendants withheld additional funds, claiming litigation expenditures were among the expenses payable under the Nominee Agreement indemnity clause. Plaintiffs consequently amended their complaints to add a conversion claim.

It is undisputed here that the parties initially agreed in writing to invest $2 million in working interest in properties, but that level of investment was never met. Defendants eventually filed a supplementary motion for summary judgment on a counterclaim seeking damages of $155,-056.09, the claimed loss to Ansam and the other Wilder, Inc. shareholders for plaintiffs' failure to invest the full amount agreed.

## II.

### District Court Proceedings

Discovery closed by September 30, 1986, and by October 30, 1986, defendants filed a motion for partial summary judgment, claiming plaintiffs had pleaded only one set of facts which failed to support plaintiffs' claims. The trial court looked to factual allegations in the complaint, disregarding proffered facts supposedly disclosed during discovery. On November 26, 1986, the extended due date for their response to the summary judgment motion, plaintiffs filed a motion for leave to file a second amended complaint. The proposed pleading allegedly recited facts newly-discovered during recent depositions.

On December 8, 1986, the district court stated that a motion to amend was an improper response to the defendants' motion for partial summary judgment. Plaintiffs withdrew the motion to amend, and on December 18, 1986, filed a statement of genuine issues which included claims of misrepresentations and omissions about fraud issues revealed in depositions taken in August and September of 1986. These "genuine issues" included many facts that had nothing to do with the cherry-picking claims contained in the first amended complaint.

On October 8, 1987, Judge Zagel, who inherited the case from Judge Marshall, granted both defendants' counterclaim and defendants' summary judgment motions without considering these newly-discovered facts. The court later denied plaintiffs' motion for reconsideration because the supposedly newly-discovered facts were not properly before the court. The district court concluded that since the defendants' motion for summary judgment was on file, any response, including a statement in opposition, could not include new issues raised in the withdrawn amended com-

plaint. To allow such a response would effectively permit the plaintiffs to plead a different case.

Fed.R.Civ.P. 56(c) provides that a summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file plus any affidavits demonstrate no genuine issue of material fact, and show that the moving party is entitled to judgment as a matter of law. The motion is granted when the documents before the court fail to demonstrate any genuine material fact issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

■ In reviewing grants of summary judgment this court applies the same standard as the district court. *Cf. Richardson v. Penfold*, 839 F.2d 392, 394 (7th Cir.1988). Should a non-moving party fail to offer a showing sufficiently establishing an element essential to that party's case, and on which that party must carry the burden of proof at trial, summary judgment is proper. *Teamsters Local 282 Pension Trust Fund v. Angelos*, 839 F.2d 366, 369 (7th Cir.1988). Merely alleging a factual dispute cannot defeat the summary judgment motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986).

### III.

*The "Cherry Picking" Claim and Newly–Discovered Facts*

■ We first examine whether the district court should have granted summary judgment without first considering the alleged newly-discovered facts that were not included in the plaintiffs' complaint. Fed.

R.Civ.P. 8(a) provides that a pleading which sets forth a claim for relief shall contain a short and plain statement of the claim showing that the pleader is entitled to relief, and a demand for judgment for the relief the pleader seeks. Rule 8(e) provides that each averment of a pleading be simple, concise and direct. Technical forms of pleading are not required.

Fed.R.Civ.P. 9(b) provides:

In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

In their October 1986 motion for partial summary judgment, defendants argued that plaintiffs' complaint contained only one set of facts, and that those facts failed to support plaintiffs' fraud and related common-law claims involving "cherry picking." Plaintiffs responded by presenting additional "facts" revealed during August and September 1986 discovery, which it claims supported allegations of fraud in addition to "cherry picking." The district court disregarded this supposedly new factual support and looked only to the factual allegations in the complaint which was the object of defendants' summary judgment motion. Plaintiffs contend the district court, by disregarding the existence of these additional disputed facts, erred because it treated this motion for summary judgment like a motion to dismiss.

The district court's response was correct. These additional facts, submitted in a Statement of Genuine Issues under local Rule 12(f) [1] have little to do with the "cherry picking" complaint at issue. Instead, plaintiffs attempted to greatly expand the

1. Rule 12(f) provides:
   Each party opposing a Rule 56 motion shall serve and file, together with opposing affidavits (if any) and other materials referred to in Rule 56(e) and a supporting memorandum of law, a concise response to the movant's statement. That response shall contain (1) a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon, and (2) a

statement, consisting of short numbered paragraphs, of any additional facts which the opposing party maintains warrants the denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon. All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party.

apparently baseless "cherry picking" claim by alleging completely new claims for fraud. All discovery and the motion for summary judgment focused on the "cherry picking" complaint. The court correctly prevented plaintiffs' attempted bypass of Rule 9(b) (pleading fraud with particularity in the complaint) and concentrated only on the averments of fraud originally pleaded. Plaintiffs should have known all the relevant facts for months before the October 1980 summary judgment motion. For some reason plaintiffs were holding back these factual allegations until a month after the summary judgment motion and two months after discovery closed.

To justify the delay, and in support of their claim that the defendants should have been on notice of the new fraud theory before it was specifically pleaded, plaintiffs rely on *Sundstrand Corp. v. Standard Kollsman Industries, Inc.*, 488 F.2d 807 (7th Cir.1973). That opinion arose from an action brought by Sundstrand Corporation for alleged violations of the Securities Exchange Act of 1934 and of related regulatory authority. Sundstrand sought to rescind the transfer of an option to purchase, and the assessment of damages. At the close of Sundstrand's case, the district judge granted motions of the defendants to dismiss under Fed.R.Civ.P. 41(b). *Id.* at 809.

Sundstrand appealed, particularly objecting to the trial court's refusal to allow Sundstrand to amend its complaint and to present evidence supporting the amended claims. This court reversed and remanded for a new trial, concluding that claims were properly part of the case. *Id.* at 812. Early in discovery, in response to interrogatories requesting additional information about the alleged fraud, Sundstrand submitted a detailed elaboration of the allegations set forth in the complaint. Because the defendant was on actual notice of these additional details, this court was willing to look beyond the pleadings, even to discovery, to determine whether the plaintiff had been fairly notified of the matters to be litigated. In *Sundstrand* the defendants, as a result of the detailed answers, knew the specifics of the additional matters Sundstrand intended to prove.

In submitting that *Sundstrand* controls here plaintiffs state that the key factor in *Sundstrand* is notice to defendants, and that the only real difference between *Sundstrand* and this case is that the district court in *Sundstrand* waited until trial to dismiss the fraud claims. We find the distinction from *Sundstrand* much more significant. The Sundstrand answers to interrogatories in that case at least sufficiently notified the defendants early on of the issues plaintiffs intended to prove at trial. Here Samuels relies on vague references to recent lengthy depositions which supposedly explored issues beyond those alleged in the complaint. This exploration is totally insufficient to put the defendants on notice. Other issues not covered in the complaint are irrelevant and would be treated as such in the court's ruling on defendant's motion for summary judgment. To now point to these obscure references as proper notice has no foundation in the Federal Rules nor in the unique circumstances of *Sundstrand.* Here, in contrast to *Sundstrand,* the defendants did not know that events beyond those detailed in plaintiffs' complaints were the subject of litigation, did not know that plaintiffs intended to prove the events' occurrence to support plaintiffs' case, and did not know "the substance and particulars" of plaintiffs' "version of such events." *Id.*

Plaintiffs, seemingly in hindsight, emphasize that had they amended their complaint before the defendants' motion for summary judgment, the district court would have considered the allegedly new facts which it ignored. Aside from the fact that they did not timely move to amend, had they done so the district court still would have to approve. Fed.R.Civ.P. 15(a) provides that a party may amend its pleading by leave of court which shall be freely given when justice so requires. The objectives of both Rule 15 and Rule 56 must be accommodated. 6 Moore, Taggart & Wicker, *Moore's Federal Practice* § 56.10, at 56–92 (2d ed. 1988). The court, in its discretion, might well have denied an amendment, even if pleaded particularly, since

plaintiffs presented a new case of fraud. Had it permitted the amendment discovery likely would have had to begin again.

■ The district court does not abuse its discretion by denying a motion to amend if granting leave to amend would unduly prejudice a party not afforded an adequate chance to respond to the newly-raised issues. *Ippolito v. WNS, Inc.,* 864 F.2d 440, 454 (7th Cir.1988). Not only did the plaintiffs not move to amend before defendants moved for summary judgment[2] but, as in *Ippolito,* the timing of raising these new issues was prejudicial to the defendants. We held in *Ippolito* that the district court had not abused its discretion in denying plaintiffs a last-minute leave to amend their complaint. *Id.* at 456. Here, the same logic compels us to conclude that the district court did not err in resolving the question of Rule 56 summary judgment without consideration of plaintiffs' allegedly newly-discovered facts. This result mutually accommodates the objectives of Rules 15 and 56.

### IV.

### *The Indemnification Clauses*

■ Included among the documents that each plaintiff had to sign in order to participate in the oil venture was a nominee agreement that contained an indemnity clause. After a thorough analysis of applicable New York law, the district court concluded that the indemnity clause required the "owner" (here the plaintiffs) to pay the litigation costs incurred by Ansam when defending this lawsuit. Plaintiffs contend that the district court erred in deciding that the indemnification clauses unambiguously included litigation between plaintiffs as owners and defendant Ansam, Inc. as nominee. Plaintiffs reason that the indemnification should be confined strictly to the nomineeship and not be extended to the participation agreements. Also plaintiffs believe good public policy limits the use of indemnification clauses in these circumstances. As

already stated, the indemnity clause in each Nominee Agreement declares:

> The Owner agrees to indemnify the Nominee, his successors, and assigns, and to hold Nominee harmless from all liability, loss, expenses, damages, costs and attorney's fees that Nominee may at any time incur by reason of any type of inquiry, action or suit which may be brought against him or made of him by any person, firm, corporation, or governmental agency or authority or anyone else by reason of the nomineeship.

In a motion for summary judgment involving a contract, a court must first decide whether or not the contract is ambiguous. That is a question of law which this court reviews de novo. *Metalex Corp. v. Uniden Corp. of America,* 863 F.2d 1331, 1333 (7th Cir.1988) (Illinois law). Under New York law, where the language is unambiguous, "no need exists to resort to other means of interpretation, and effect must be given to the parties' intent as indicated by the language itself." *Leslie Fay, Inc. v. Rich,* 478 F.Supp. 1109, 1113 (D.C.N.Y.1979). Thus, if there is no ambiguity, summary judgment based on the plain meaning of the contract is appropriate regardless of whether a party claims some other intent when the contract was drafted. 10A Wright, Miller & Kane, *Federal Practice and Procedure* § 2730.1, at pp. 265, 275–83 (2d ed. 1983).

Plaintiffs characterize the key words of the indemnity clause as the phrase "by reason of the nomineeship." The plaintiffs assert that this phrase means that Ansam is to be indemnified for expenses from legal actions engendered by Ansam's role as plaintiffs' nominee, and not that the nominee is indemnified for actions brought due to the owner's participation in the investment scheme. Plaintiffs assert a conversion claim alleging that Ansam wrongfully exercised dominion over distributions owed to plaintiffs by withholding royalties in reliance on the indemnity clause.

---

**2.** In open court on October 6, 1986, Samuels' attorney acknowledged: "Counsel informed me he's planning to file a motion for partial sum-

mary judgment." Defendants filed their motion on October 30, 1986.

Defendants instead consider the key language of the indemnity clause to be its embrace of "any type of inquiry, action or suit" brought by "any person, firm, corporation ... or anyone else." The district court also targeted this language in determining that Ansam's expenses in defending this lawsuit were covered by the indemnification clause.

Since, as the parties stipulated, New York law governs this case, the district court relied heavily on *Levine v. Shell Oil Co.*, 28 N.Y.2d 205, 321 N.Y.S.2d 81, 269 N.E.2d 799 (1971). (Curiously, in spite of its importance, neither party cited *Levine* in their briefs.) Levine was employed at a gas station operated by Visconti and owned by Shell Oil Company. Levine sued Shell and Shell impleaded Visconti, claiming that an indemnification agreement between Shell and Visconti, as operator-tenant, was responsible for any damage. The *Levine* indemnity clause provided:

> Lessee shall indemnify Shell against any and all claims, suits, loss, cost and liability on account of injury or death of persons or damage to property, or for liens on the premises, caused by or happening in connection with the premises (including the adjacent sidewalks and driveways) or the condition [,] maintenance, possession or use thereof or the operations thereon.

*Id.* 321 N.Y.S.2d at 84, 269 N.E.2d at 801. The harsh factual background of the interpretation of the *Levine* indemnity clause reveals the strictness of the New York courts in reading such provisions.

For "some time" the lubritorium of the Levine Shell service station had been heated by a natural gas heater with a rusted and leaking fuel line. The odor of natural gas "permeated the lubritorium" but even though notified Shell made no inspections or repairs. Yet the New York Court of Appeals held of this indemnity clause: "Since the plain meaning of these words fairly includes the liability for the active negligence of Shell, we see no reason why more should be required to establish the unmistakable intent of the parties. A contrary construction would result in the conclusion that the clause was a nullity." *Id.* 321 N.Y.S.2d at 86, 269 N.E.2d at 803.

We agree with the district court that, as in *Levine*, had Samuels any reservations about the scope of the indemnity clause he should have insisted upon other language. Ansam invokes its indemnity clause rights here simply to recover expenses absorbed in defending against plaintiffs' unproved claims. These claims could not exist unless plaintiffs had invested with Ansam and Ansam purchased interests and functioned as Nominee, running the risks this clause shields against. These risks include expenditures toward defending unfounded claims as here. Samuels, the lead plaintiff and himself a lawyer, negotiated the indemnity provision. As the district court noted, he was apparently aware that other types of indemnity clauses were available. He should have insisted on an alternative if he did not approve of this one.

■ Public policy does not intervene as plaintiffs suggest. This is not a loss created by Ansam that plaintiffs are forced to pay. Rather, the loss (litigation expenses) resulted from a successful defense of a suit brought by plaintiffs. The district court properly found the indemnification clause applicable and the plaintiffs responsible for the expenses for defending the unproved claims.

## V.

*Ansam's Counterclaim*

Defendants additionally moved for summary judgment on their counterclaim for plaintiffs' breach of a written agreement to invest two million dollars in the oil and gas properties. The district court entered judgment for defendants in the amount of $155,056.09 plus interest. The plaintiffs invested some of the money promised, but claim that the original contract was modified as evidenced by an affidavit from Samuels. Plaintiffs further argue that any supposed contracts existing between Wilder and Ansam, and between Wilder and Sanguine, Ltd., were oral and properly contested below. Plaintiffs finally argue that

neither Wilder nor Ansam was damaged even if the asserted oral contracts did exist.

■ First, regarding the alleged modification of the original agreement, Paragraph 12 of the Ansam–Stratford Investments–1982A agreement (the "Modifications" clause) provides: "This Agreement may not be changed except by an instrument in writing and signed by the parties or their lawful representatives." N.Y.Gen. Oblig.Law § 15–301.1 and .2 provide:

1. A written agreement or other written instrument which contains a provision to the effect that it cannot be changed orally, cannot be changed by an executory agreement unless such executory agreement is in writing and signed by the party against whom enforcement of the change is sought or by his agent.

2. A written agreement or other written instrument which contains a provision to the effect that it cannot be terminated orally, cannot be discharged by an executory agreement unless such executory agreement is in writing and signed by the party against whom enforcement of the discharge is sought, or by his agent, and cannot be terminated by mutual consent unless such termination is effected by an executed accord and satisfaction other than the substitution of one executory contract for another, or is evidenced by a writing signed by the party against whom it is sought to enforce the termination, or by his agent.

We agree with the district court that under New York law when an agreement provides as here that it may be modified only by a writing, it cannot then be changed by an oral executory agreement. We observe again that both the lengthy brief and the reply brief of plaintiffs fail even to cite this statutory authority relied upon in the district court.

Further, defendants claim binding commitments to the extent of $2 million were made between Wilder and Ansam, and also between Wilder and Sanguine, Ltd., in reliance upon the 1982–A Partnership's commitment to Ansam. Plaintiffs' claim that the relationships between Wilder and Ansam, and between Wilder and Sanguine, were oral and informal. Plaintiffs present extensive deposition evidence. But under Fed.R.Civ.P. 56(c) any facts not outcome-determinative under the law, though themselves in dispute, may still permit entry of summary judgment. *Donald v. Polk County*, 836 F.2d 376, 378–79 (7th Cir. 1988). Plaintiffs' evidence simply does not demonstrate that the agreements were not contractually binding upon the parties, whether or not oral and informal.

■ Finally, regarding plaintiffs' argument over the damages, we find that the plaintiffs' dispute the total of damages by appealing to deposition testimony allegedly indicating that sufficient funds were found notwithstanding plaintiffs' breach of contract. The evidence supporting defendants' damages claim drew upon the affidavit of the President of Ansam. But plaintiffs, in responding to defendants' summary judgment motion, already had the damages evidence upon which plaintiffs rely today. Therefore, we agree with the district court that plaintiffs' evidentiary material was improperly presented on its motion for reconsideration. Plaintiffs acted too late. *Publishers Resource, Inc. v. Walker–Davis Publications, Inc.*, 762 F.2d 557, 561 (7th Cir.1985). Summary judgment for defendants was appropriately granted.

## VI.

*Plaintiffs' Motion to Supplement Record*

■ On appeal plaintiffs filed a motion to supplement the record with plaintiffs' reply brief of July 27, 1988. This motion requested the inclusion of documents never filed with the district court. On August 2, 1988, we denied plaintiffs' motion as premature. On August 15, 1988, plaintiffs filed a motion for reconsideration, which we denied on August 22, 1988. However, on August 15, 1988, plaintiffs filed an appendix to their reply brief. On September 29, 1988, the district court denied plaintiffs' motion to supplement the record on appeal and rejected the appendix. On October 20, 1988, plaintiffs filed a separate notice of appeal from this September 29, 1988, district court order. This issue of whether to

supplement the record is now before us consequent to an order of this court of October 19, 1988.

Plaintiffs again propose supplementing the record as originally attempted by their motion of July 27, 1988, to add a lengthy appendix to their reply brief. They argue that if there is any deficiency in the record the proper remedy is correction of the record. The appendix is presented because defendants have represented that throughout discovery they had absolutely no notice of plaintiffs' common law fraud claims, and defendants further have represented that discovery was singularly focused upon whether defendants had cherry picked the wells.

As already indicated, the district court denied plaintiffs' motion to supplement the record on appeal, and rejected the appendix. In reviewing a trial court's evidentiary rulings, we employ the abuse of discretion standard. *Culli v. Marathon Petroleum Co.*, 862 F.2d 119, 122–23 (7th Cir. 1988). Under these circumstances, where voluminous materials were not presented to the district court prior to appeal, the denial was not an abuse of discretion. Therefore, the motion for summary judgment is confined to the cherry picking issue, and plaintiffs cannot today raise additional issues nor belatedly supplement the record with voluminous documents that somewhere allegedly include "proof" that the defendants should have been aware of the additional fraud charges.

For the reasons stated above, the judgment of the district court is

AFFIRMED.