**DRIBECK IMPORTERS, INC.,**
**Plaintiff–Appellee,**
**Cross–Appellant,**

**v.**

**G. HEILEMAN BREWING CO., INC.,**
**Defendant–Appellant, Cross–Appellee.**

**Nos. 88–2984, 88–3087.**

United States Court of Appeals,
Seventh Circuit.

Argued June 1, 1989.
Decided Aug. 23, 1989.

---

Bradley H. Foreman, Ronald L. Barnard, Barnard & Associates, Chicago, Ill., for plaintiff-appellee, cross-appellant.

David E. Beckwith, Robert L. Binder, Foley & Lardner, Milwaukee, Wis., Eugene L. Resnick, John H. Anderson, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, Ill., Debra A. Juncker, Milwaukee, Wis., for defendant-appellant, cross-appellee.

Before BAUER, Chief Judge, CUMMINGS and RIPPLE, Circuit Judges.

RIPPLE, Circuit Judge.

Dribeck Importers, Inc. (Dribeck) filed this case against G. Heileman Brewing Co., Inc. (Heileman), seeking recovery for costs incurred in the defense of lawsuits brought by former beer wholesalers against Dribeck. Dribeck claimed that Heileman breached its duty to defend and indemnify Dribeck against such wholesaler actions—a duty imposed pursuant to an earlier settlement agreement entered into between Dribeck and Heileman. Both parties moved for summary judgment. The district court granted summary judgment to Dribeck.

See *Dribeck Importers, Inc. v. G. Heileman Brewing Co.*, No. 86 C 4901, 1987 WL 15761 (N.D.Ill. Aug. 12, 1987) (memorandum opinion and order); R. 39 [hereinafter Mem. op.]. The district court then awarded Dribeck damages for expenditures incurred by the wholesaler suits, R. 58, and later ruled that Dribeck could recover its costs incurred in this present action, but not its attorney's fees. R. 69; 70. Heileman appeals the determination of liability entered on summary judgment (No. 88–2984); Dribeck cross-appeals on the attorney's fees issue (No. 88–3087). We now reverse the district court's grant of summary judgment and remand for further proceedings.

## I.

## BACKGROUND

Beck's beer (Beck's) is brewed in Bremen, West Germany and is imported into this country by Dribeck.[1] In August 1979, Dribeck and Heileman entered into a distribution agreement under which Heileman was named the exclusive master distributor of Beck's in a 22–state region occupying the central continental United States. As master distributor, Heileman executed buy-sell agreements with wholesalers for the distribution of Beck's; these agreements between Heileman and individual wholesalers could be cancelled by either party on thirty days' written notice. See R. 23 at Ex. A. These wholesalers acted as the exclusive subdistributors in certain specified markets, selling Beck's to retailers.

In January 1985, Dribeck decided to terminate the Heileman master distributorship. Heileman responded by filing a complaint that alleged that Dribeck's proposed termination violated the Wisconsin Fair Dealership Law. This action, together with Dribeck's counterclaim for breach of contract, was settled by agreement between Dribeck and Heileman on July 15, 1985.[2] R.1. at Ex. A [hereinafter Settle-

---

1. Dribeck is the exclusive American importer of Beck's in all but seven states of the United States. In seven western states, Beck & Co.— the brewer of Beck's—directly handles sales;

neither Beck & Co. nor its western sales are implicated in this case. R. 22.

2. In settlement of the parties' claims, Dribeck paid Heileman $345,000 and Heileman agreed

ment Agreement]. Under the Settlement Agreement, Heileman ceased acting as regional master distributor on August 31, 1985; effective September 1, 1985, Dribeck assumed direct responsibility for distributing Beck's to wholesalers in the central United States.

Because it no longer could provide Beck's after September 1, Heileman sent, to each of its wholesalers, cancellation notices stating that its buy-sell agreement for the distribution of Beck's was cancelled as of September 1, 1985. R. 23 at Ex. B (sample cancellation notice dated July 30, 1985). Although the Settlement Agreement permitted Dribeck to execute new buy-sell agreements with former Heileman-contracted wholesalers for the continued distribution of Beck's, see R.1 at Ex. A, pp. 3–4, Dribeck did not execute such agreements with all former wholesalers. Several former Heileman-contracted wholesalers of Beck's whom Dribeck declined to re-engage filed actions against Dribeck, alleging various intentional, wrongful acts by Dribeck.[3] The disposition of these cases was as follows: (1) three Ohio lawsuits filed against Dribeck were dismissed for lack of personal jurisdiction, and the Sixth Circuit affirmed the two cases that were appealed;[4] (2) a Tennessee lawsuit[5] was settled for $5,250; and (3) a Wisconsin lawsuit[6] was settled for $1,500.

Dribeck then filed this action against Heileman for recovery of defense and indemnification costs incurred as a result of these five wholesaler actions. R. 1. On cross-motions for summary judgment, both parties relied primarily on the explicit language of the Settlement Agreement. According to Dribeck, Heileman breached its duties imposed by paragraph 8 of the Settlement Agreement; those duties are best understood by also considering the Agreement's scope as detailed in paragraph 7. The two provisions state that:

7. Heileman agrees that at any time from and after the date of this agreement, Dribeck may communicate with and enter into agreements with current Heileman wholesalers and any other wholesalers to act as wholesalers of Beck's beer after August 31, 1985. This paragraph applies solely to the Heileman area as defined in the Distribution Agreement.

8. Heileman agrees, at its sole cost, to defend and hold Dribeck harmless from and against any claim, suit, liability of judgment made, asserted or recovered against Dribeck by any Heileman wholesaler arising from the discontinuance of Heileman's supplying Beck's beer to any such wholesaler. In the event only a portion of said claim, suit, liability or judgment pertains to the said discontinuance of Heileman's supplying Beck's beer, then this indemnification shall only relate to that portion. This indemnity does not extend however to (a) that part

---

to dismiss voluntarily its Wisconsin lawsuit with prejudice and to release Dribeck from any liability arising out of its decision to cancel the master distributorship contract. R. 1 at Ex. A, pp. 2–3.

**3.** In *Crown Distributing Co. v. Dribeck Importers, Inc. & G. Heileman Brewing Co.*, No. 85–2540–I (Chancery Ct., Davidson Cty., Tenn. undated) (complaint), Jt.App. at 33, the plaintiff wholesalers named *both* Dribeck and Heileman as defendants.

**4.** *R.L. Lipton Dist. Co. v. Dribeck Importers, Inc.*, No. C 85–3869 (N.D.Ohio Sept. 27, 1985) (complaint), Jt.App. at 85; *dismissed for lack of personal jurisdiction*, No. C 85–3869 (N.D.Ohio Oct. 18, 1985), Jt. App. at 134; *aff'd*, No. 85–3921 (6th Cir. Feb. 17, 1987), Jt.App. at 151.

*Ohio Valley Wine & Beer Co. v. Dribeck Importers, Inc.*, No. A 8507814 (Ct.Com. Pleas,

Hamilton Cty., Ohio Sept. 27, 1985) (complaint), Jt.App. at 117; *dismissed for lack of personal jurisdiction*, No. C–1–86–1670 (S.D. Ohio Feb. 9, 1986), Jt.App. at 145; *aff'd*, No. 86–3209 (6th Cir. Feb. 17, 1987), Jt.App. at 151.

*Ken Anderson Beverage Co. v. Dribeck Importers, Inc.*, No. C–3–85–823 (S.D.Ohio Oct. 25, 1985) (complaint), Jt.App. at 109; *dismissed for lack of personal jurisdiction*, No. C–3–85–823 (S.D.Ohio Jan. 31, 1986), Jt.App. at 159.

**5.** *Crown Dist. Co. v. Dribeck Importers, Inc. & G. Heileman Brewing Co.*, No. 85–2540–I (Chancery Ct., Davidson Cty., Tenn. undated) (complaint), Jt.App. at 33.

**6.** *Range Beverage, Inc. v. Dribeck Importers, Inc.*, No. 85 CV 126 (Cir.Ct., Iron Cty., Wis. Nov. 20, 1985) (complaint), Jt.App. at 67; No. 85–C–1157–C (W.D.Wis. June 5, 1986) (opinion and order denying motion to dismiss), Jt.App. at 70.

of any claim, suit or liability made or asserted by any Heileman wholesaler arising from the discontinuance after August 31, 1985, of any direct commercial relationship which may arise between Dribeck and any Heileman wholesaler, and (b) that part of any claim, suit or liability made or asserted by any Heileman wholesaler alleging any intentional, wrongful act by Dribeck other than a claim that Dribeck induced the breach of any contract between the wholesaler and Heileman.

R.1 at Ex. A, ¶¶ 7, 8.

In its ruling on summary judgment, the district court (Williams, J.) agreed with Dribeck's interpretation. Reading paragraphs 7 and 8 of the Settlement Agreement jointly, it concluded that the five wholesaler suits fell "squarely within the terms of the Settlement Agreement's language that Heileman shall defend and indemnify Dribeck from any claim 'arising from the discontinuance of Heileman's supplying Beck's beer to any such wholesaler.'" Mem. op. at 6. In later proceedings on the determination of damages, the district court (Conlon, J.) awarded Dribeck $110,137.92 for attorney's fees and costs incurred in defense of the five wholesaler lawsuits, as well as costs incurred in this

indemnification action against Heileman. *See* R. 59; 70. The district court, however, denied Dribeck's motion for attorney's fees incurred in this action.

## II.

### ANALYSIS

On appeal, Heileman submits that the district court erred in granting summary judgment to Dribeck. According to Heileman, the explicit terms of paragraph 8 of the Settlement Agreement require this court to vacate the judgment of the district court and enter summary judgment in Heileman's favor. Appellant's Br. at 6–25. In the alternative, it asserts that genuine questions of material fact render summary judgment inappropriate and the case should be remanded for trial. *Id.* at 25–31.[7] Dribeck responds by arguing that the district court correctly rejected this argument and that a reading of the Settlement Agreement in its entirety yields the contrary result—the plain language of the Settlement Agreement compels Heileman to pay Dribeck for expenditures incurred in the five wholesaler suits. Appellee's Br. at 9–18.[8] Dribeck also cross-appeals the district court's determination that the so-

---

**7.** Dribeck submits that Heileman waived any argument that the contract raises genuine issues of material fact because Heileman never made such a contention before the district court. Appellee's Br. at 18–22. Dribeck's argument is meritless. While Heileman, like Dribeck, moved primarily to obtain summary *judgment* on the basis of the plain language of the Settlement Agreement, it also submitted an affidavit offering a conflicting interpretation of the indemnification language in paragraph 8. *See* R. 31.

**8.** At oral argument, Dribeck's attorney suddenly changed his argument in support of the district court's judgment to a theory relying on semantic distinctions between duties to "defend" and "indemnify." This argument was not briefed in response to Heileman's appeal, but rather, was submitted only in Dribeck's cross-appeal as a ground on which it claimed entitlement to an award of attorney's fees incurred in this action. *See* Appellee's Br. at 22. At oral argument, Dribeck's attorney argued that, under the language of paragraph 8 of the Settlement Agreement, Heileman had *separate* duties to "defend" and "hold harmless/indemnify." He further

stated that Dribeck does not seek indemnification for the amounts paid to settle the Wisconsin and Tennessee lawsuits—$6,750—but rather, seeks recovery for the costs and attorney's fees incurred by those suits—a sum alleged to be in excess of $150,000. *See* R. 1 at 3.

Ordinarily, we refuse to address issues not properly presented to the court for review. New arguments may not be raised for the first time at oral argument. *See Dovenmuehle v. Gilldorn Mortgage West Corp.*, 871 F.2d 697, 701 n. 5 (7th Cir.1989); *Lim v. Central DuPage Hosp.*, 871 F.2d 644, 647–48 (7th Cir.1989). As this argument is arguably before us, we shall nevertheless dispose of it. In sum, Dribeck's argument is undermined by the terms of paragraph 8. The explicit language chosen by the parties considers the duties to "defend" and "hold harmless" as interchangeable and refers jointly to all duties imposed by the provision. *See* R. 1 at Ex. A, ¶ 8 ("In the event only a portion of said claim, suit, liability or judgment pertains to the said discontinuance, ... then *this indemnification* shall relate only to that portion. *This indemnity* shall not extend, however, to [situations covered in exceptions (a) and (b) to paragraph 8]....") (emphasis supplied).

called "American rule" of attorney's fees bars an award of attorney's fees incurred as a result of prosecuting this case. Appellee's Br. at 22–26. In light of our disposition of the case—reversing the district court's grant of summary judgment on liability—we decline to reach the merits of Dribeck's cross-appeal.

## A. Governing Law

Our duty, in examining the district court's grant of summary judgment, is to review *de novo* the record and the controlling law. "[W]e must decide whether the record shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Colan v. Cutler–Hammer, Inc.*, 812 F.2d 357, 360 (7th Cir.) (per curiam), *cert. denied*, —— U.S. ——, 108 S.Ct. 79, 98 L.Ed.2d 42 (1987); *see also DeValk Lincoln Mercury, Inc. v. Ford Motor Co.*, 811 F.2d 326, 329 (7th Cir.1987). A genuine issue of material fact exists only where "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

Generally, "[c]ontract interpretation is a subject particularly suited to disposition by summary judgment." *Metalex Corp. v. Uniden Corp.*, 863 F.2d 1331, 1333 (7th Cir.1988); *see also* Fed.R.Civ.P. 56(c). As an initial step, however, "a court must first decide whether or not the contract is ambiguous." *Samuels v. Wilder*, 871 F.2d 1346, 1351 (7th Cir.1989) (indemnification clause case); *see also Metalex*, 863 F.2d at 1333; *Skycom Corp. v. Telstar Corp.*, 813 F.2d 810, 815 (7th Cir.1987). If a contract is "'unambiguous and contains no uncertain terms, interpretation of the contract is a question of law for the court,'" *City of Clinton, Ill. v. Moffitt*, 812 F.2d 341, 342 (7th Cir.1987) (quoting *Nerone v. Boehler*, 34 Ill.App.3d 888, 340 N.E.2d 534, 536 (1976)), and "summary judgment based on the plain meaning of the contract is appropriate regardless of whether a party claims

some other intent when the contract was drafted." *Samuels*, 871 F.2d at 1351. However, "if the court finds that the contract is ambiguous, the contract's meaning becomes a fact question for the trier-of-fact." *Metalex*, 863 F.2d at 1333. Therefore, while summary judgment may be appropriate for many contract cases, this general observation cannot be taken as an inflexible maxim.

Under Illinois law,[9] a contract is ambiguous "only if it is *'reasonably* and *fairly* susceptible to more than one meaning.'" *Metalex*, 863 F.2d at 1334 (quoting *Lenzi v. Morkin*, 116 Ill.App.3d 1014, 72 Ill.Dec. 414, 416, 452 N.E.2d 667, 669 (1983), *aff'd*, 103 Ill.2d 290, 82 Ill.Dec. 644, 469 N.E.2d 178 (1984)) (emphasis added by *Metalex* court). In the words of the Illinois Supreme Court, when a contract is unambiguous on its face

> [b]oth the meaning of the instrument, and the intention of the parties must be gathered from the face of the document without the assistance of any parol evidence or any other extrinsic aids.

*Rakowski v. Lucente*, 104 Ill.2d 317, 84 Ill.Dec. 654, 657, 472 N.E.2d 791, 794 (1984). When reading a contract to determine whether it is unambiguous, we must bear three additional principles in mind. First, "[m]eaning and effect should be given, if possible, to every part of a contract including all its terms and provisions. No part of a contract should be rejected as meaningless or surplusage unless absolutely necessary." *Gross v. University of Chicago*, 14 Ill.App.3d 326, 302 N.E.2d 444, 453 (1973); *see also Illinois Valley Asphalt v. La Salle Nat'l Bank*, 54 Ill.App.3d 317, 12 Ill.Dec. 28, 32, 369 N.E.2d 525, 529 (1977) (guarantee clause case). Second, "the court should view the contract as a whole." *Meeker–Magner Co. v. Globe Life Ins. Co.*, 152 Ill.App.3d 534, 105 Ill.Dec. 569, 571, 504 N.E.2d 854, 856 (1987); *see also Smith v. Clark Equip. Co.*, 136 Ill.App.3d 800, 91 Ill.Dec. 520, 524, 483 N.E.2d 1006, 1010 (1985) (indemnification clause case). Third, "[t]he terms of a contract should be given

---

**9.** Both Dribeck and Heileman agreed that "the terms of this Settlement Agreement shall be interpreted in accordance with the laws of Illinois." R. 1 at Ex. A, ¶ 10.

their natural and ordinary meaning."
*Meeker–Magner,* 105 Ill.Dec. at 571, 504
N.E.2d at 856.

### B. Application to This Case

#### 1. Submission of Heileman

On appeal, Heileman submits that the five lawsuits fall within exception (b) to paragraph 8—no duty to defend or indemnify for "that part of any claim, suit or liability made or asserted by any Heileman wholesaler *alleging* any intentional, wrongful act by Dribeck other than a claim that Dribeck induced the breach of any contract between the wholesaler and Heileman." R. 1 at Ex. A, ¶ 8 (emphasis supplied).[10] In its view, this exception includes claims against Dribeck "based on Dribeck's own direct relationship with the named plaintiff," or "based on its own intentional wrongdoing against the wholesaler." Heileman's Reply Br. at 2.

#### 2. Decision of the District Court

The district court squarely rejected Heileman's proffered interpretation of the contract. In its view,

> [t]he essence of Heileman's argument is that, because the five suits at issue charge Dribeck with wrongdoing, the suits are not covered by the indemnity provision. But if suits which charge Dribeck with wrongdoing are not covered, then no suit against Dribeck would be covered. Any lawsuit which names Dribeck as a party must at a minimum allege that Dribeck harmed the plaintiff wholesaler. Heileman's interpretation renders the indemnity provision useless.

See Mem. op. at 6–7. The district court therefore adopted the interpretation now espoused by Dribeck: the Settlement Agreement, read in its entirety, requires that Heileman defend and indemnify Dribeck against *any* wholesaler suit arising from the cessation of Beck's deliveries due to the Settlement Agreement. Under this reading, the only wholesaler suits against Dribeck for which Heileman would *not* be responsible would be those in which Dribeck established an independent relationship with a wholesaler after the termination of Heileman's master distributorship (as anticipated by paragraph 7 of the Settlement Agreement), and then Dribeck inflicted some wrong on the wholesaler. *See* Appellee's Br. at 10–12.[11]

#### 3. Analysis

In our view, the wording of the Settlement Agreement does not, by itself, permit a definitive determination as to whether Heileman must indemnify Dribeck. The Settlement Agreement must therefore be considered ambiguous and further proceedings in the district court are necessary to determine the intent of the parties regarding the scope of Heileman's duty to defend and indemnify Dribeck.

One of the five wholesaler cases at issue in this case illustrates particularly well the ambiguity of the agreement. In *Range Beverage,*[12] a former Wisconsin Beck's wholesaler sued Dribeck, alleging wrongful termination of the distributorship. Jt.App. at 67. According to the allegations of the complaint, Range Beverage and Dribeck had entered into an agreement in July 1975 under which Range Beverage was to distribute Beck's within a specified region of

---

**10.** Heileman's other assertion that the five wholesaler suits fall within exception (a) to paragraph 8 of the Settlement Agreement—suits "made or asserted by any Heileman wholesaler arising from the discontinuance after August 31, 1985, of any direct commercial relationship which may arise between Dribeck and any Heileman wholesaler," *see* Appellant's Br. at 29–31, lacks merit. None of the wholesaler suits alleged that Dribeck ever entered into any relationship with any of these wholesalers after the Settlement Agreement date. Thus, exception (a) does not apply.

**11.** To interpret properly the Settlement Agreement, Dribeck submits that paragraph 7 must be read as granting Dribeck the right to establish ties with former Heileman-contracted wholesalers after August 31, 1985. Exception (a) thus covers any suits that may result from this new relationship. *See* Appellee's Br. at 12. Exception (b), according to Dribeck, was solely an acknowledgment that "Heileman ought not to bear the cost of defending Dribeck against charges of *tortious* conduct committed by Dribeck over which Heileman had no control." *Id.* (emphasis in brief).

**12.** *See supra* note 6.

Wisconsin. In 1979, Dribeck "changed its method of delivery" of Beck's (that is, Heileman then became master distributor), but Dribeck and Range Beverage maintained "a continuing financial interest." *Id.* at 67–68. Therefore, the plaintiff further alleged, the cessation of deliveries of Beck's on October 10, 1985 constituted a violation of the Wisconsin Fair Dealership Law, Wis.Stat.Ann. §§ 135.01–07, for which Dribeck was liable. Jt.App. at 68. According to the complaint, Heileman's intervening status as regional master distributor in 1979 did not affect the original duties owed by Dribeck to Range Beverage under Wisconsin law.[13]

Under Heileman's interpretation, the case falls within exception (b) to paragraph 8 because it alleges Dribeck's violation of an *independent* duty arising under state law and a prior continuing agreement between Dribeck and Range Beverage. We cannot say that this interpretation is either unfair or unreasonable. *Range Beverage* suggests an application of exception (b) which, contrary to the apprehensions of the district court, does not render the balance of the indemnification clause nugatory. The language of paragraph 8, when read in the context of the entire agreement, does not clearly preclude *Range Beverage* from falling within the scope of exception (b). It is quite possible to read the agreement to require indemnification by Heileman when former wholesalers sue Dribeck because Heileman has ceased delivering Beck's,[14] but, at the same time, not to require such indemnification when a suit was brought against Dribeck on the ground that it had defaulted with respect to an obligation that existed independently of Heileman's obligations. Here, the plaintiff alleged the existence of a separate relationship and agreement with Dribeck before Heileman was named master distributor. To exclude such suits from the indemnification clause would not curtail Heileman's duty to defend and indemnify Dribeck for suits brought by former wholesalers to whom Dribeck owed no independent duty stemming either from state law or a pre–1979 agreement.

On the other hand, we cannot say that the language of the agreement necessarily precludes the interpretation urged by Dribeck. When viewed pragmatically, the *Range Beverage* litigation is a consequence of Heileman's termination as regional master distributor pursuant to the Settlement Agreement and the consequential termination of the buy-sell agreements between Heileman and the individual wholesalers. A broad reading of the Settlement Agreement in its entirety could lead to the conclusion that the parties contemplated that suits such as *Range Beverage* would be covered by the indemnification agreement and that exception (b) to paragraph 8 is limited solely to cases in which Dribeck developed a new relationship with the wholesaler after the Settlement Agreement.

An examination of the other wholesaler suits also supports the conclusion that the scope of exception (b) to paragraph 8 is ambiguous. Two of the three Ohio cases, *Lipton* and *Ken Anderson,*[15] alleged a prior independent distribution agreement with Dribeck unaffected by Heileman's intervening status as regional master distributor. *See* Jt.App. at 85–86, 109–11. All three Ohio wholesaler suits alleged that Dribeck violated duties imposed on the importer by the Ohio Alcoholic Beverages Franchises Act, Ohio Rev.Code §§ 1333.82–.87. *See* Jt.App. at 85, 112, 118. In the Tennessee wholesalers' suit, *Crown Distributing,*[16] the plaintiffs alleged that Dribeck and Heileman had wrongfully terminated the franchise in violation of Tennessee law.

---

**13.** Dribeck moved for summary judgment, which was denied by the district court. *See* Jt.App. at 70. Although the court stopped short of endorsing the plaintiff's theory, it ruled that summary judgment was inappropriate due to the presence of disputed issues of material fact. *Id.* at 80. The suit was settled for $1,500.

**14.** Dribeck is the only potential defendant who can provide Beck's after the execution of the Settlement Agreement. Therefore, Dribeck is, as a practical matter, a necessary defendant for injunctive relief.

**15.** *See supra* note 4.

**16.** *See supra* note 5.

Jt.App. at 33. Specifically, they alleged that, under Tennessee law, their distribution agreements were made directly with Dribeck; Heileman, instead, acted simply "as an agent of Dribeck." *Id.* at 34. *See also* Tenn.Code Ann. § 57–6–104(f) ("Every manufacturer or *importer* of beer as defined in § 57–6–102(1) shall designate sales territories for each of its brands sold in Tennessee, and shall name one (1) licensed beer wholesaler in each territory who, within such territory, shall be the exclusive wholesaler for said brand....") (emphasis supplied); *id.* at § 57–6–104(g)(1) (*importer's* duty to notify state of new brands and wholesaler territories). As with *Range Beverage, supra,* the allegations made in all these wholesaler suits are susceptible to two conflicting and equally reasonable interpretations of exception (b) to paragraph 8.

We cannot discern definitively the parties' true intent from the face of the agreement. The two contrary reasonable readings of paragraph 8 of the Settlement Agreement demonstrate that an ambiguity exists. Therefore, no determination of Heileman's liability for defense and indemnification can be made on summary judgment. *See Zurich Midwest, Inc. v. St. Paul Fire & Marine Ins. Co.,* 159 Ill. App.3d 961, 111 Ill.Dec. 813, 814, 513 N.E.2d 59, 60 (1987) ("A contract term is ambiguous when it is reasonably capable of having been understood in more senses than one because of indefiniteness of language or expression or due to its having a double or multiple meaning."). Additionally, while the mere fact that the parties take divergent views of the meaning of the contract does not necessarily render the agreement ambiguous, *see id.,* the insistence of both parties that paragraph 8 is *unambiguous,* followed by diametrically opposed readings, is "itself a fair indication of its ambiguity." *Schwartz v. Michigan Power*

*Mgt. Co.,* 564 F.Supp. 125, 130 n. 16 (N.D. Ill.1983).

## CONCLUSION

Accordingly, we reverse the district court's judgment. Summary judgment on this record was inappropriate. The case is remanded for further proceedings consistent with this opinion.

REVERSED AND REMANDED.